OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### NOVEMBER TERM, 1920.

In the matter of the probate of the will of ANNIE B. PAULLIN.

[Decided February 28th, 1921.]

1. Where a husband and wife were living together in harmony, and each was observant of his or her marital duties, the domicile of the husband was presumptively the domicile of the wife.

2. Where a wife before her marriage lived part of the time in Atlantic City, where she was in business, and part of the time in Philadelphia, and after the marriage the husband and wife followed the same practice, it was the husband's legal right to select which residence should be the family domicile.

3. Where a husband, who lived part of each year in two cities, called on the assessor in one of them and had his name placed in the assessor's blotter for the coming assessment, such conduct showed a selection by the husband of such city as his domicile.

4. Where it is shown that a husband had selected such city as his domicile, the mere fact that his wife described herself as a resident of another city did not present the question of her right to a separate domicile, even assuming that the law would give her a right to do so.

419

5. On dismissal of a proceeding to probate a will because the testatrix was not domiciled in New Jersey, the court, being without jurisdiction over the estate, had no authority to allow counsel fees, costs and expenses.

On appeal from the prerogative court.

*Mr. Clarence L. Cole* and *Mr. William M. Clevenger,* for the proponent-appellant.

*Mr. Joseph J. Summerill, Mr. John Boyd Avis (Mr. Joseph W. Kenworthy,* of Philadelphia, on the brief), for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

The question is, Where was the testatrix domiciled at her death? *Chadwick's Case, 80 N. J. Eq. 471.* She had long been engaged in business in Atlantic City and had resided there part of each year. As she prospered, she had acquired also a residence on North Broad street, Philadelphia, where she spent a large part of each winter. She was a widow, having been thrice married before her marriage to Mr. Paullin. He was a widower past seventy years of age, in business at Philadelphia and living and voting at Pitman, in this state. After the marriage, which took place at her home in Philadelphia, he abandoned his residence at Pitman and ceased to vote there. He and his wife lived together, apparently much as she had lived, part of the time in the rooms over her bake shop in Atlantic City; part of the time in the North Broad street house in Philadelphia; part of the time was spent in pleasure trips together. On December 20th, 1918, they went to Atlantic City expecting to return to Philadelphia December 26th. They were delayed until January 6th, 1919, and from that date lived in the North Broad street house until Mrs. Paullin died there on January 29th, 1919. The will was admitted to probate by the Atlantic orphans court; its decree was reversed by the prerogative court, which refused

probate to the will because the testatrix was not domiciled in New Jersey. The latter decree is before us for review.

If it were necessary or important we think a very strong argument could be made for the proposition that Mrs. Paullin's domicile, from the time of her purchase of the North Broad street house, ten years or more before her death, was in Philadelphia. Upon her marriage, however, the domicile of her husband became her domicile. *Tracy* v. *Tracy, 62 N. J. Eq. 807; In re Geiser's Will, 82 N. J. Eq. 311.* Other cases are collected in *19 C. J. 414.*

All parties agree that Mr. and Mrs. Paullin lived together, and there is not the slightest suggestion that they did not live together harmoniously, each observant of his or her marital duties. The presumption is, that the domicile of the husband was the domicile of both. He resided both in his wife's Atlantic City and Philadelphia residences, and it was his legal right to select which residence should be the family domicile. We find nothing to show a conscious determination to select one rather than the other until Mrs. Paullin's illness in December, 1918. Probably the distinction between residence and domicile and the importance of the latter never before occurred to either. With his wife's illness, in December, 1918, it seems to have become impressed on Mr. Paullin. On December 27th he called on the assessor of the proper division in Philadelphia and inquired if he was assessed. The assessor told him he was not, but his name would be taken for future reference for the May assessment; the assessor showed Mr. Paullin his blotter book and that he (the assessor) had written Paullin's name in right there in front of him (Paullin). Paullin returned about the middle of January and inquired if his name was on the assessor's list and was reassured by the assessor that he still had his name for the coming assessment on the blotter (which seems to have been the only book the assessor then had). We think this conduct not only proves the selection of Philadel-. phia as his domicile, but proves that selection in as persuasive a way as possible, by choosing it as the place where he should be taxed. We are not concerned with his possible motive. He, naturally, as was his right, selected the jurisdiction where the

laws of inheritance would favor him in case of his wife's death. It is clear that his domicile thereby became fixed at Philadelphia and his wife's domicile followed his. If she had previously selected Atlantic City as a domicile, it was subject to change by the act of the husband as long as they lived together as one family and had the same residence. "The unity of domicile exists during coverture, unless the wife acquires one elsewhere by the husband's consent," either actual or constructive. *In re Geiser's Will, supra; Anderson* v. *Watt, 138 U. S. 694.*

The case differs from cases where the wife justifiably leaves her husband and resides elsewhere and is permitted to make her actual residence her legal domicile. That she may in a proper case acquire a domicile of her own apart from her husband is recognized not only in actions against him for divorce, but in actions against other parties and in matters of inheritance. *Williamson* v. *Osenton, 232 U. S. 619; Shute* v. *Sargent, 36 Atl. Rep. 282,* the converse of the present case. We find no case where the law assists in separating man and wife who are living together in harmony by giving them distinct domiciles. On the contrary, it gives an action for loss of the consortium and for alienation of affections and formerly at any rate for restitution of conjugal rights, and allows the wife to adopt a separate domicile only in case of necessity, as Chief-Justice Shaw held in an early and well-known case. *Harteau* v. *Harteau, 14 Pick. 181.* No necessity for a double domicile existed in this case. In fact, Mrs. Paullin never requested that she be allowed to select a separate domicile; the mere fact that she described herself as a resident of Atlantic City is not conclusive on the question of domicile, of which she probably never thought. The case does not present the question of her right to a separate domicile by adequate proof even if we could suppose the law would permit separate domiciles in view of the marital rights and obligations which require that husband and wife shall live together as one family. Mrs. Paullin might have preferred that her step-children should succeed to her property; if so, she should have protected them by an antenuptial contract; but the courts have no right to deprive the husband of his legal rights by twisting the law to the purpose. The unity and peace of

families is of too much consequence to the state to justify a course out of harmony with the well-settled principles of our Marriage law.

The orphans court allowed counsel fees; the decree was reversed by the prerogative court; probably, no question was raised as to the propriety of allowing counsel fees. The prerogative court allowed counsel fees, costs and expenses to both sides in both courts. As the probate courts of New Jersey are without jurisdiction over the estate, we are unable on the record before us to sustain these allowances. With this exception, let the decree be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, TAYLOR—7.

*For reversal*—BERGEN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS—6.