OCEAN COUNTY CIRCUIT COURT.

J. WILBERT SNYDER, contestant,

*v.*

THOMAS CALLAHAN, incumbent.

[Submitted December 30th, 1924. Decided January 5th, 1925.]

**Elections—Legal Residence—Intent of Voter as Well as Fact of Residence to Control—Residence May Be Acquired and Forthwith Abandoned—Personal Registration in Another State and Affidavit of Residence There, Establishes Residence for Time Being—Though Immediately Abandoned for a Residence in This State, Right to Vote Will Not Accrue Until the Constitutional Limitation of One Year Has Expired—Married Woman May Acquire Voting Residence Apart From That of Her Husband With Whom She Lives.**

*Mr. John A. Riggins,* for the contestant.

*Mr. Lewis Starr,* for the incumbent.

DONGES, J.

An election was held at Surf City, Ocean county, at which contestant and incumbent were candidates for the office of assessor, and Joseph C. Eckert and Walter J. Donahue were candidates for the office of collector and treasurer. Callahan and Donahue each received twenty-one votes and Snyder and Eckert each received twenty votes. Snyder and Eckert started contests alleging that Mary A. Donahue and Mae V. Donahue, who admittedly cast votes at said election for Callahan and Donahue, were not qualified voters of Surf City and that their votes were illegal.

The facts are relatively few and are practically uncontroverted. Mrs. Mary A. Donahue is the widow of William H.

Donahue, lately mayor of Surf City, at which place she resided during part of the year with her husband "for thirty-one years, off and on." It is admitted by Mrs. Donahue that in September, 1924, she personally registered as a qualified voter in the forty-ninth election district of the Forty-second ward of the city of Philadelphia, in the State of Pennsylvania. The record of registration shows that she gave answers under oath to certain questions propounded, as follows:

"Present residence, street and number." "233 Ashdale."
"Householder, lodger, lessee or owner." "Owner."
"Length of residence in the city." "Fifty-eight."
"In the district." "Four months."
"Place of residence at time of last registration." "New Jersey."
"Street and number." "Surf City."
"Year." "1923."

"Signed, MARY A. DONAHUE."

It appears that Mrs. Donahue knew that she had been registered in Surf City in 1923, because she swore to it as above indicated. She testified before me as follows (page 20):

"Q. As a matter of fact, you had been registered in New Jersey ever since women were allowed to vote? A. I have, yes.

"Q. And had you voted in Surf City? A. I have voted twice in Surf City.

"Q. What years? I think it was 1920 and 1921, but I haven't voted since, and, quite naturally, I thought my name had automatically been taken off the list.

"Q. Is that the reason you went down? A. That is the reason I registered in Pennsylvania, because I thought I would have to go back to New Jersey, and I wasn't just in a position to go then."

Again, on page 19, she testified:

"Q. When you signed your name to the registry book, did you know that you had been registered in New Jersey for this year, 1924? A. No, that is the reason I registered in Pennsylvania.

"Q. Why did you register in Pennsylvania? A. Well, I wanted—it was presidential year and I thought I shouldn't lose my vote, and it was too late to register in Surf City, so I thought, well, I will just go over here to my nearest place and vote in Pennsylvania this year."

Undoubtedly, Mrs. Donahue had acquired a domicile and voting residence in Surf City. Philadelphia was her domicile of origin. The question is, Did she by her conduct evidence an intention to change her domicile? I think she did. She knew that she could vote only where she had her legal residence. The fact that personal registration was not required in Surf City may or may not have been known to her. It seems to me to be immaterial whether she knew her name would be put on the list without personal registration. What she knew was that she could vote only from her legal residence, and when she presented herself to the district board in Philadelphia she declared that her place of residence in 1923 was New Jersey, but that her present residence was 233 Ashdale street, in the city of Philadelphia, where she had resided for four months.

In *Guggenheim* v. *Long Branch,* 80 *N. J. Law 246,* Mr. Justice Minturn, speaking for the supreme court, said:

"That residence is a question of *bona fide* intention upon the part of the citizen, and where doubt exists as to its proper *situs,* the *animo revertendi* of the claimant is decisive in establishing it, was determined by this court as early as 1840 in the case of *Cadwalader* v. *Howell, 3 Harr. 138.* That adjudication is also authority for the proposition that a residence in law, once obtained, continues without intermission until a new one is gained." * * *

In *Watkinson* v. *Watkinson,* the court of errors and appeals, speaking by Judge Vroom, in treating of the question of domicile as a basis for jurisdiction under our Divorce act, quotes with approval the language of Mr. Justice Depue in *Harrell* v. *Harrell,* that "to the *factum* of residence must be added the *animus manendi,* and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home," and, continuing, the court says: "The doctrine laid down by the

courts of the United States is that a domicile having been once acquired continues until a new one is actually acquired *animo et facto."* 10 Am. & Eng. Encycl. L. 15. And while, in determining the *animus manendi*, the declarations of the claimant are material and important, yet, as was said by Vice-Chancellor Van Fleet in *Firth* v. *Firth*, "the best and most trustworthy evidence of it is to be found as a general rule in his acts rather than in his declarations."

Vice-Chancellor Reed, in *Valentine* v. *Valentine, 61 N. J. Eq. 400,* in discussing whether the domicile of Valentine was in Camden, New Jersey, or New Orleans, Louisiana, said:

"If, however, he, for an instant, while having a residence, in fact, in the city of New Orleans, had also an *animus manendi,* his domicile was there, until he changed it. * * *

"The general rule in respect to the acquisition of a new domicile is, that after a person has abandoned his domicile of origin, or his acquired domicile, his domicile will be considered to be in that place in which he has voluntarily fixed his habitation, not for a special or temporary purpose, but with a present intention of making it his home, unless, or until, something which is uncertain or unexpected should happen to induce him to adopt some other permanent home."

The above sets forth the well-settled rules to be applied to the facts in this case.

The test is whether Mrs. Donahue, while having an actual residence in Philadelphia, had also an *animus manendi*— that is, a present settled intention to remain in the chosen locality for an indefinite time. As was said by Vice-Chancellor Reed, if having residence, the *animus manendi* existed only for an instant, domicile was established. It is probable that, after the death of her husband in 1922, Mrs. Donahue had quite as much interest in Philadelphia, except for an occasional candidacy of some member of her family in Surf City. She did not vote after 1921 until 1924. She wanted to vote somewhere in 1924 and chose Philadelphia, and gave her home in that city as her residence. That act fixed her domicile and voting residence in that city. She could change

it the next day, and, when she found she was registered in New Jersey, may have honestly intended to re-establish her domicile in Surf City, and, indeed, may, in fact, have done so. But it does not follow that she would be qualified to vote in Surf City that year. I cannot agree with counsel for the incumbent that it necessarily follows that a person must be entitled · to vote somewhere. The constitution requires that a person, otherwise qualified, must reside in this state for one year and in the county for five months to entitle him to vote.

I am of the opinion that Mrs. Mary A. Donahue, by her expression of intention, evidenced by personally registering as a legal voter in Philadelphia, surrendered her domicile in Surf City and acquired it in Philadelphia. Assuming that, as a matter of expediency, she changed her intention the next day, and declared and *bona fide* intended to have her domicile in Surf City, she was not qualified to vote there until the statutory period for residence had elapsed. Obviously, this ·time had not elapsed.

I conclude, therefore, that Mrs. Mary A. Donahue was not a qualified voter in Surf City in November, 1924.

Much that has been said of Mrs. Mary A. Donahue's case applies to Mrs. May V. Donahue. She is the wife of the incumbent, J. Walter Donahue. She personally registered in Philadelphia in September, 1924. She had never been registered and never voted in Surf City.

She had been married two years, living at Brooklyn, New York, at the time of her marriage. Her husband had homes in Philadelphia, Pennsylvania, and Surf City, New Jersey, maintaining his voting residence at Surf City.

When sworn and asked questions by the Philadelphia registration board, Mrs. Donahue said she lived at 263 Lindley avenue, Philadelphia, where she had resided for two years, and that her last residence was in Brooklyn. Admittedly, she had no domicile in Surf City unless she acquired it by the fact of marriage to J. Walter Donahue, who lived most of the year in Philadelphia, but who had a voting residence in Surf City.

It is undoubtedly true that, by operation of law, the domicile of the husband is, for many purposes, that of the wife, and that his domicile fixes her domicile for purposes connected with the marriage relation and the duties of husband and wife. Where a husband maintains several places of abode, to which his wife follows him in the performance of her marital duties, she may choose for herself where she will establish her voting residence.

Mrs. Donahue gave Brooklyn as her residence prior to her residence in Philadelphia. She, apparently, never regarded herself as a resident of Surf City. She spent little time there, and when she registered she announced herself as a resident of Philadelphia. I am of opinion that she could do so, and that she had no residence in Surf City when she personally registered in Philadelphia in September, 1924. If, by marriage, her domicile for all purposes was that of her husband, then by voluntarily making Philadelphia her voting residence, she lost her voting residence in Surf City. If, thereafter, she chose to follow her husband and establish a voting residence where he had one, the required period of residence must elapse before she was a qualified voter there. *9 Rul. Cas. L. 1035; Dorsey* v. *Brigham, 177 Ill. 250; 52 N. E. Rep. 303; 42 L. R. A. 809, 812.*

I conclude that, at the date of the election here involved, Mrs. May V. Donahue had not been a resident of the State of New Jersey for one year, nor a resident of Ocean county for five months next before the election.

It is apparent that the desire to vote in Surf City was an afterthought on the part of both of the ladies concerned, dictated by reasons of expediency. It is equally evident that in September they intended to vote as legal residents of Philadelphia. Domicile and voting residence being so much a matter of intention, when there is clear and unmistakable evidence of such intention, it cannot be disregarded. In this case it seems to me there can be no doubt of the intention of both of these ladies to claim a voting residence in Philadelphia, and, having done so, whether under a misapprehension

of their right to vote in New Jersey or not, they cannot, by changing their minds, obliterate the status thus acquired.

It follows that the votes of Mrs. Mary A. Donahue and Mrs. May V. Donahue ought not to be counted for the incumbent. If these votes had not counted, the contestant had the greater number of votes, and should have been declared elected as assessor.