## No. 28085

**Robert A. Theobald; N. E. Buchholz; Nancy M. Fritts; Stella Lucille Roberts; and Bernard F. Titony v. Lois M. Byrns, Clerk of the Town of Blue River and L. Scott Gould and Anthony L. Weiss**

(579 P.2d 609)

Decided May 8, 1978.                    Rehearing denied May 25, 1978.

Alperstein, Plaut and Snead, Frank Plaut, for applicants.

David R. Lass, for respondent.

Pendleton, Sabian & Landeck, P.C., Monica S. Glickman, for respondents-intervenors.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

One of the applicants seeks to be on the ballot as a condidate for mayor of the Town of Blue River and the other four seek similar designation as candidates for trustees thereof. The town clerk refused so to certify them. In a proceeding under 31-10-1401, C.R.S. 1973 (1977 Repl. Vol.), the district court affirmed the clerk's action. We accepted an appeal under the provisions of that section and, pursuant to a stipulation entered into by all of the parties, the election was stayed. We now reverse.

■ As used in this opinion the term "residence" means a structure serving the person involved as a dwelling. *The Random House Dictionary,* 1220 (1966).

Each of the candidates maintains a residence in Colorado at a location other than within Blue River. Each contends that he or she also has a *bona fide* residence in Blue River, which is his or her domicile.

The town election was to be held on April 4, 1978. On March 6, 1978 the applicants filed nominating petitions with the respondent town clerk. Three days thereafter the respondent-intervenors filed objections thereto. [1] After an investigation, the clerk sustained the objections and refused to certify the applicants' names upon the ballots.

The Municipal Election Code in section 31-10-301, C.R.S. 1973 (1977 Repl. Vol.), requires that a candidate reside in the municipality for at least 12 consecutive months prior to the election. Since here we use the term "residence" in a different sense (as defined above), for the purpose of clarity in this opinion, we treat this statute as requiring that a person have his or her *domicile* in the municipality for 12 months. Thus, the question is: Did the applicants have their domiciles in Blue River?

With the exception of Buchholz, each of the applicants has owned a residence in Blue River for considerably more than one year, and has occupied it for a portion of each year of ownership. Three of them (Fritts, Roberts and Titony) did not register as voters in Blue River until November 17, 1977. Each of the applicants receives the bulk of his or her mail at addresses not in Blue River.

The applicant Theobald owns five houses, each of which he has occupied for a portion of the time during the 12-month period here involved: The one in Blue River, two in Breckenridge, Colorado, and one each in Denver, Colorado and Taos, New Mexico.[2] He has owned and occupied one of the houses in Breckenridge for more than 30 years. During much of that time he has conducted his law practice at another location in Breckenridge. Blue River is in Summit County, a few miles south of Breckenridge, the county seat. In 1964, when Blue River was incorporated, he changed his voting registration to his Blue River address. He became the first mayor of Blue River in 1964 and served in that office until his resignation in 1976. He has conducted a real estate business from his Blue River structure and, while he was mayor, it was used for town meetings.

The applicant Fritts and her husband operate a floral business in Littleton, Colorado, and since 1959 have occupied a residence owned by them in Littleton.

---

[1] Sections 31-10-302 and 305, C.R.S. 1975 (1977 Repl. Vol.).
[2] There is no contention that he is a citizen of New Mexico.

The applicant Roberts and her husband also have owned and occupied a residence in Littleton for approximately 18 years. They work five days a week in the Denver area.

The applicant Titony occupies a property in Westminster, Colorado, from which he has conducted his work for 18 years. He owns two residential properties in Blue River and intends that one of them will be his retirement home.

The applicant Buchholz, who is 71 years of age, was employed in the office of the Summit County Assessor as a special appraiser until his retirement a year and a half ago. Until his retirement his domicile was at his residence in Blue River. Around January 1, 1977, he conveyed this property to his children. He has an address in Englewood, Colorado. He still owns unimproved property in Blue River and on occasion occupies the house in Blue River now owned by his children.

In a discussion of the law relating to the term "residence" and "domicile," the district judge stated the following, with which we heartily agree:
"The terms, their correlation, and their application have plagued the courts for years. There is no simple, clear-cut formula to be gleaned from the case law for application to any particular factual circumstances."
The judge also stated:
"The concepts of residence and domicile which were formulated in early authorities, carried forward into case law and statutory definition, do not take into account what is known to all and what this record clearly establishes: Our society has become fluent and by reason of the current economy, experienced only in relatively recent years, members of that society may have two or more homes, places of habitation or abodes, and those who do never have any intention of abandoning either. Furthermore, such persons, from time to time, leave one home or habitation for another, with the intent of sometime returning after whatever duration to the first.
"In this context, there has evolved a concept of a second home. Many, particularly in metropolitan areas, maintain houses or physical-structure residences in rural or mountain areas which they purchased and intend to retain as second homes. Those are not their principal places of abode; those are not the principal places where they intend to live; those are not the places where they have a present permanent intention to return after whatever duration.
"The contrary, of course, may also be true. There are those who maintain secondary places of abode in metropolitan areas to be in proximity with, for example, their employment or business, yet their principal or primary home may well be in the rural or mountain areas.
"The Court is of the view that the residence of a person for purposes of qualifying as a candidate for municipal office is where his principal or primary home or place of abode is; it is that place where he has the present intention of returning after a departure of however long or short a

duration. It is a place he considers home, however often he might travel from one place of habitation to another.

"The evidence in this case was in direct conflict concerning the time spent by the petitioners in their various places of habitation and the activities carried on by them in such places. The Court finds that the petitioners . . . do not maintain their principals or primary home or place of abode in the Town of Blue River. It is not the place they call home or in which they live with the present intention to return and permanently reside. Their physical-structure residences in Blue River are secondary homes.

"Under the applicable statute, they are not qualified candidates for municipal office and the action of the respondent clerk, to that extent, is affirmed."

We have found two competing schools of thought. One, which appears to be in line with the trial court's decision, is represented by 1 *J. Beale, The Conflict of Laws,* §§ 10.5, 24.1 (1935); and *G. Stumberg, Principles of Conflict of Laws* 33-35 (3d Ed. 1963). It is also seemingly adopted by §20 of the *Restatement (Second) of Conflicts of Law.* (But see, Comment c in the Reporter's Note section).

The opposing viewpoint is argued for by *W. Cook, The Logical and Legal Bases of the Conflict of Laws,* 194-210 (1942); and is evidenced in numerous cases, the leading case of which is perhaps *In re Newcomb's Estate,* 192 N.Y. 238, 84 N.E. 950 (1908). *See also, Chambers v. Hathaway,* 187 Cal. 104, 200 P. 931 (1921); *Hurst v. City of Flemingsburg,* 172 Ky. 127, 188 S.W. 1085 (1916); *In re Dorrance's Estate,* 115 N.J. Eq. 268, 170 A. 601 (1934); *Snyder v. Callahan,* 3 N.J. Misc. 269, 129 A. 410 (1925); *In re Paullin's Will,* 92 N.J. Eq. 419, 113 A. 240 (1921); *People ex rel. Croen,* 2 App. Div. 2d 696, 152 N.Y.S.2d 706 (1956); *In re Appleby's Estate,* 106 N.Y.S.2d 294 (1951); *In re Village of Chenequa,* 197 Wis. 163, 221 N.W. 856 (1928).

To reiterate the question posed earlier in this opinion: When a candidate for municipal office under the statutes here involved has two *bona fide* residences, What is the test to determine his or her domicile? By its decision, in effect determining that the domicile is the place of the principal or primary home, the district court adopted a strictly objective test. That is to say, under the court's principal-or-primary-home test, the result can be determined from evidence of the candidate's activities and mode of life.

On the other side of the coin, many courts permit more of a subjective test in which a person with two or more *bona fide* residences may for some purposes make a determination as to which one constitutes his domicile. To oversimplify the matter perhaps, in such a situation the person may elect to have his domicile where his heart is. "[I]n some cases an intent to acquire a legal 'domicile' rather than to 'make a home in fact' has been given effect to by courts, and . . . this is as it should be." *W.*

*Cook, supra,* 204.

■ This is apparently a matter of first impression before this court. The question is close. The scales are so evenly balanced that a little weight on either side will weigh it down. It is our opinion that, in the case of a person having two *bona fide* residences, that person is entitled to freedom of choice as to his domicile under the election statutes here considered. We elect, therefore, to reject the principal-or-primary-home test, and hold that, if any of the applicants has a *bona fide* residence in Blue River and if he or she has the intention that Blue River is his or her domicile, which is evidenced by objective factors such as voter registration there, then that applicant's domicile is in Blue River and he or she is entitled to be a candidate on the ballot.

A case quite in point is *People ex rel. Croen,* 2 App. Div. 2d 696, 152 N.Y.S.2d 706 (1956). There the appellants maintained residences in New York City and in Putnam County, New York. They were registered voters in Putnam County, but it was virtually conceded that their principal residences were in New York City. The question was whether their names should be stricken from the registry of voters in Putnam County. The court held that they "had the right to select their own domicile and to elect between their residences in New York City and Putnam County, and to make a domicile of either . . . and if they have in good faith elected to adopt Putnam County as their domicile [they have the right] to compel the registry of their names as voters . . . in that county."

■ We have mentioned that *In re Newcomb's Estate,* 192 N.Y. 238, 84 N.E. 950 (1908) is probably a leading case.[3] There, for a few years prior to her death, a lady greatly desired to live and die with her domicile in New Orleans, although she never spent a majority of her time in Louisiana. We quote with approval the following excerpts from an opinion written by Associate Judge Irving G. Vann of the New York Court of Appeals seventy years ago:

"As 'domicile' and 'residence' are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning; but they are not identical terms, for a person may have two places of 'residence,' as in the city and country, but only one 'domicile.' . . . 'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place and also an intention to make it one's domicile. . . . Residence without intention, or intention without residence, is of no avail. . . . Uno so lo die constituitiur domicilium si de voluntate appareat.[4] Residence is necessary, for there can be no domicile without it, and important as evidence, for it bears strongly

---

[3] Incidentally, this is a pleasantly entertaining opinion which lawyer and nonlawyer alike will find delightful reading.

[4] On a single day domicile is established if it is apparent that this constitutes one's wishes.

upon intention, but not controlling, for unless combined with intention it cannot effect a change of domicile. [Cases cited] There must be a present, definite, and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. The subject is under the absolute control of every person of full age and sound mind who is free from restraint, unless it may be that the domicile of a wife is controlled by that of her husband as long as she lives with him. Story's Conflict of Law (7th Ed.) §46. Subject to the qualifications named, every human being may select and make his own domicile, but the selection must be followed by proper action. Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim, or fancy, for business, health, or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another, and the acts of the person affected confirm the intention. [Case cited] No pretense or deception can be practiced, for the intention must be honest, the action genuine, and the evidence to establish both clear and convincing. . . . There may be many absences from the new place and protacted sojournings in the old. . . . As we have seen, a person may select and make his own domicile, and no one may let or hinder. He may elect between his winter and summer residence and make a domicile of either."

We wish to emphasize that the views we have expressed and the approval indicated as the language we have quoted is in the context of qualification to be a candidate under the statute here involved. These views and quotations possibly may not be applicable to other situations. For example, we are not here treating or passing upon domicile for the purpose of taxation. Also, we are here speaking only to situations where there is no challenge whatsoever to the fact that a person is a resident *somewhere* within the state of Colorado.

Our interpretation coincides with the general intent of the statutory scheme. The primary interest evidence by the statutes here involved is simply to insure that a person votes in only one locality. Nowhere in the statutes is there an expression of the principal-or-primary-home test formulated by the district court. We recognize, of course, that, within constitutional guidelines, the General Assembly may expressly impose such a test if it desires.

On remand, the district court should determine whether or not each applicant had a *bona fide* residence in Blue River for the 12-month period involved. If it finds that any applicant had such a *bona fide* residence, it should then determine whether he or she had an intent to make this his or her domicile during the 12-month period and, under the guidelines we have given, determine if in fact for that time it was his or her domicile. It has been argued that Theobald did not have a *bona fide* residence, but merely an office in Blue River. Further, it has been contended that Buch-

holz had no dwelling in Blue River during this time, but rather was merely visiting with his children on occasion.

It appears that upon remand the principal determinations of the district court will be findings of fact. It, therefore, can be anticipated that it is unlikely that we will further review the determination of the district court after remand.

After determination of the district court following remand, it is directed to set a date for the election, which except for these proceedings would have occurred on April 4, 1978, and to enter such orders as may be appropriate for the notice and conduct of such election. Under the stipulation of the parties, we direct that such election should be conducted as if it in fact had been held on April 4, 1978 so far as application of candidates and registration of electors is concerned.

Judgment reversed and cause remanded with directions to proceed consonant with the views and directions contained in this opinion.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.