**Vince P. GORDON, Mayor–Elect of the City of Woodland Park, Applicant,**

**v.**

**Eugene S. BLACKBURN, Respondent.**

**No. 80SA268.**

Supreme Court of Colorado.

Oct. 27, 1980.

1. Colo.Sess.Laws 1931, ch. 120 at 465–80.

Newman E. McAllister, Colorado Springs, for applicant.

Kenneth L. Covell, Colorado Springs, for respondent.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Terre Lee Rushton, Asst. Atty. Gen., Denver, amicus curiae.

ROVIRA, Justice.

We accepted jurisdiction of this case under section 31–10–1305, C.R.S.1973 (1977 Repl. Vol. 12), in order to make a final adjudication of the validity of the mayoral election held in the city of Woodland Park on April 8, 1980. This election was contested by the respondent, Eugene S. Blackburn, after the applicant for appellate review, Vince P. Gordon, was elected mayor of

Woodland Park by a majority of two votes. Upon its analysis of the stipulated facts, the district court judged the election null and void.[1] It held that two contested votes were cast illegally because the electors were not "residents" of the municipality and, thus, were not qualified to vote under sections 31–10–102(8.5) and 31–10–201(3)(a), C.R.S.1973 (1979 Supp.). We reverse.

## I.

The applicant was elected mayor of Woodland Park, Colorado, on April 8, 1980, by a margin of two votes. He and the respondent have stipulated the facts which form the basis of the contest of this election.

James and Barbara Tout are husband and wife. They owned, operated, and resided at the Woodland Hills Lodge in Woodland Park from May 1, 1971, until January 25, 1980. During this period, no one had questioned that they met all the qualifications to be legal residents and electors in Woodland Park and that they considered it their home. In May 1979, the Touts purchased a vacant lot within the city limits and within their existing election precinct where they intended to build a new home. An architect completed plans and specifications for this building on March 14, 1980. On the same day, these documents were given to a contractor in Woodland Park who submitted his construction bid on April 10, 1980.

In the meantime, however, the Touts arranged to sell the Woodland Hills Lodge where they had been living. This sale was completed on January 25, 1980. The Touts moved to a rental house outside the boundaries of Woodland Park on January 25.

Mr. Tout had been a member of the Woodland Park City Council. He resigned from it on January 3, 1980, announcing that his personal affairs during this period of transition for his business and living arrangements had to be given priority over his official duties. He declared publicly that he intended to maintain his "official place of residence" in Woodland Park.

Both parties agree that on election day, April 8, 1980, the Touts did not own, rent, or occupy any dwelling house within the city limits of Woodland Park. They also agree that the Touts intended for Woodland Park to remain their home, even though they were temporarily living outside its boundaries awaiting the completion of their new permanent dwelling. It is stipulated that this was their intent when they voted on April 8, 1980, and changed their address on the precinct's voter registration list to that of the vacant lot on which they planned to build their home. During the time they rented housing outside the city and prior to the election, they were not employed in Woodland Park; they had no parents or children living there; and no building permit had been issued for their prospective dwelling.

The district court ruled that the language of the statutes defining "residence" and the qualifications of electors requires that, at the time of voting, one occupy an existing structure within the municipality conducting the election. See sections 31–10–102(8.5) and 31–10–201(3)(a), C.R.S.1973 (1979 Supp.). The court also held that the Touts' change of dwellings, despite their intention to return to Woodland Park, terminated their right to vote.

## II.

In *Theobald v. Byrns*, 195 Colo. 330, 579 P.2d 609 (1978), we addressed the problem of determining how to identify the legal residence of an elector who has established more than one "residence" in different election districts.[2] The court was careful to

1. *See* sections 31–10–1301(1)(b) and 31–10–1307, C.R.S.1973.

2. The *Theobald* case involved the statutory qualifications of a candidate for municipal office. The basic prerequisites for such a candidate are that the person be (a) a qualified elector and (b) reside in the municipality "at least twelve consecutive months immediately preceding the date of the election." See sections 31–10–201 and 31–10–301, C.R.S.1973. This extended residency requirement is the major difference between the municipal candidates' qualifications and those of the ordinary

explain that its use of the term "residence" was nontechnical and signified merely a physical structure which serves a person as a dwelling. This term was distinguished from that of a legal residence (or "domicile") which is created if a person has the intention of permanently residing in a place he considers his "home." *See Carlson v. District Court*, 116 Colo. 330, 180 P.2d 525 (1947); *Lyons v. Egan*, 110 Colo. 227, 132 P.2d 794 (1942); *Merrill v. Shearston*, 73 Colo. 230, 214 P. 540 (1923); *see also* Reese and Green, *That Elusive Word, "Residence,"* 6 *Vand.L.Rev.* 561 (1953).

The test for determining domicile adopted in *Theobald v. Byrns, supra*, was "subjective" in the sense that an elector was allowed to declare his own intention about which of multiple dwellings constituted his true "home" by registering to vote at the address he preferred. This expression of intent, based on personal preference, was held to be the prime factor in the creation of one's place of legal residence. The court acknowledged that it was a close question whether to adopt this test or a more "objective" one which looks to evidence of a person's activities and mode of life in determining which residence is his "principal or primary home." The court recognized that it was within the constitutional power of· the legislature to impose such a principal–or–primary–home test if it so desired.

In 1979 the legislature adopted a new method for determining the legal residence of an elector. *See* Colo.Sess.Laws 1979, ch. 39, 1–1–104(26.5), 1–2–101(1)(b) and (2), 1–2–103(1)(a) and (b), 31–10–102(8.-5), and 31–10–201(3)(a) at 278–79. In considering the time element and the subject matter of this legislation, the conclusion is inescapable that the legislature intended to modify the rule announced in *Theobald v. Byrns, supra*. The statutes were amended

to require an objective or "principal–or–primary–home" test for legal residence.

For purposes of municipal elections, residence is now defined as "the principal or primary home or place of abode of a person as set forth in section 31–10–201(3)." [3] In section 31–10–201(3)(a), C.R.S. 1973 (1979 Supp.), the legislature provided that:

"the residence of a person is the principal or primary home or place of abode of a person. Principal or primary home or place of abode is that home or place in which his habitation is fixed *and to which a person, whenever he is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of absence.* In determining what is a principal or primary place of abode of a person, the following circumstances relating to such person may be taken into account: Business pursuits, employment, income sources, residence for income or other tax purposes, age, marital status, residence of parents, spouse, and children, if any, leaseholds, situs of personal and real property, and motor vehicle registration." (Emphasis added.)

It is clear from the language of this statute that, once a person's legal residence has been established, his intention to keep it becomes the central factor in determining whether it continues. If a person maintains the "present intention of returning," he may leave his voting residence, for even a lengthy period, without losing it. [4] The statutes governing municipal elections require that the following inquiry be undertaken if an elector has moved outside the boundaries of his voting precinct and wishes to retain his right to vote there: (1) Had the party established his principal or primary home or place of abode within the

---

elector who is required to reside within his precinct for thirty-two days preceding election day. *See* sections 1–2–101 and 31–10–201, C.R.S.1973.

**3.** Section 31–10–102(8.5), C.R.S.1973 (1979 Supp.).

**4.** *See also* section 31–10–201(3)(b), C.R.S.1973, which provides that "[a] person shall not be considered to have lost his residence if he leaves his home and goes into another state or territory or another county or municipality of this state merely for temporary purposes with an intention of returning."

election precinct? and (2) Was the individual's departure taken or does his absence continue with a "present intention of returning" to the precinct in the future?

Turning to the stipulated facts of the present case, we reach a different conclusion from the district court. It determined that the Touts' lack of an existing physical habitation in their election precinct was conclusive evidence of their decision to abandon it as their legal residence or primary home. Continuing physical presence was the prime factor the court considered. The Touts' free choice to dwell in a rental house while waiting for their new one to be constructed was held determinative of their intention to make it their "primary" home.

■ However, as *Theobald v. Byrns, supra*, explained and as the statutes contemplate, it is not always an easy matter to decide the question of legal residence. It may be that in a majority of cases a person's physical dwelling and his intent to live there coincide. But all the circumstances must be considered before reaching a decision regarding a person's intention to establish a new principal or primary home. *See People v. Turpin*, 49 Colo. 234, 112 P. 539 (1910); *Parsons v. People*, 30 Colo. 388, 70 P. 689 (1902).

> "If the relation of person to place were determined by mere physical presence the question of what constitutes legal residence would be relatively simple; but the intent of the individual is an important element in the problem which cannot be ignored and such intent can only be inferred from acts and declarations of a very diverse and often inconclusive character."

*K. Kennan, Residence and Domicile*, § 1 at 1-2 (1934).

■ In this case there is substantial evidence that the Touts had established their principal or primary home in Woodland Park: (1) for over eight and one-half years they lived at the Woodland Hills Lodge within the city limits; (2) during this time they considered themselves and were treated by others as residents; (3) their business operation and self-employment were located within the city; (4) Mr. Tout was elected to city council; (5) the marital status of the partners was continuous and localized in Woodland Park; (6) they owned and continue to own real property within the city limits; (7) they had not planned to establish an "official place of residence" elsewhere. These circumstances justify the conclusion that Woodland Park was their principal or primary home. This is not a case such as *Theobald v. Byrns, supra*, where two or more physical structures exist simultaneously and the living habits of the parties point to the possibility of alternative legal residences, only one of which can be "primary." Here, Woodland Park has been the single, continuous, and primary locus of these electors' political concerns. *See Ramey v. Rockefeller*, 348 F.Supp. 780 (E.D.N.Y.1972).

■ The mere intention to return to a former abode at some more or less indefinite time, with no other indicia of a home or domicile, may not fulfill the usual requirements of "legal residence" for voting purposes. *See K. Kennan, supra*, § 508. But the statutes make clear that one does not lose voting rights by reason of a departure or absence from the primary home, once it has been established. Section 31-10-201(3)(a), C.R.S.1973 (1979 Supp.); section 31-10-201(3)(b), C.R.S.1973; *see Kay v. Strobeck*, 81 Colo. 144, 254 P. 150 (1927). The intention of the individual is of prime importance in resolving this problem; and to do so, all the surrounding facts and circumstances must be weighed. *See K. Kennan, supra*, § 516.

In this case Mr. Tout made a public declaration that he intended Woodland Park to be his "official place of residence" when he resigned from city council. All parties agree that the Touts did not intend to establish a permanent place of abode in their rental house. It was to be their temporary dwelling, not their fixed place of habitation. The parties also agree that as soon as the new house in Woodland Park was completed, the Touts intended to occupy it. Other than the bare fact of their temporary physical absence from the city, all circumstances

show that the Touts had a present intention to return to live within the precinct of their voting registration as soon as they practically could.[5] We, therefore, hold that these electors never abandoned their principal or primary home within their voting precinct and that, consequently, they preserved their right to vote in Woodland Park.

We reverse the decision of the district court that James and Barbara Tout voted illegally in the municipal election held on April 8, 1980, in Woodland Park, Colorado. We remand for further proceedings in accordance with this opinion.

ERICKSON and QUINN, JJ., dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent.

Section 31-10-201(3)(a), C.R.S.1973 (1977 Repl. Vol. 12) sets forth the standards for determining the residence of a municipal voter. The "objective" or principal–or–primary residence test which the majority reviews was adopted as a statutory test for determining which of two or more possible residences an elector may use for voting purposes. It is axiomatic that the test set forth in the statute should be applied only after an initial determination has been made that the elector does in fact have more than one residence.

The facts in this case are that the Touts did not live in Woodland Park on April 8, 1980. The only residence that they maintained on April 8, 1980 was outside of Woodland Park. The statute which governs the decision in this case was enacted to prevent those who are not residents, and live outside of a municipality, from voting in a municipal election. *Theobald v. Byrns*, 195 Colo. 330, 579 P.2d 609 (1978), which the majority cites, was effectively limited by the adoption of Senate Bill 251 which became effective on July 1, 1979. Section 31-10-201(3)(a), C.R.S.1973 (1979 Supp.).

In my view, the trial court properly analyzed the stipulated facts. The statute provides in part that: "The residence of a

person is the principal or primary home or place of abode of a person . . . ." At the time of the election the Touts did not maintain a home or abode in the city of Woodland Park. Their mere intention to return to Woodland Park after a residence was built on the lot which they purchased does not amount to residency when measured by the statutory test. Domicile and legal residence are not interchangeable terms. The General Assembly has set forth in unequivocable terms the requirements which entitle a resident to vote in a municipal election.

According, I would affirm the trial court.

QUINN, J., joins me in this dissent.

---

5. We note that the Touts' change of address on election day is authorized by the statutes. See section 31-10-203(2), C.R.S.1973, and section 1-2-208(2), C.R.S.1973.