**The PEOPLE of the State of Colorado, Petitioner**

v.

**David Wayne WHITE, Respondent.**

No. 08SC1003.

Supreme Court of Colorado, En Banc.

Nov. 30, 2010.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

The People petitioned for review of the court of appeals' judgment reversing White's convictions of sexual assault on a child, incest, and possession of marijuana. At trial, White moved for a mistrial on the grounds that one of the jurors was not a resident of Teller County. The trial court denied the motion, finding there to be sufficient evidence of residency. Because the record indicated that the juror had recently moved into his sister's apartment in Colorado Springs but failed to indicate an intent to return to reside in Teller County within twelve months, the court of appeals concluded that the trial court's finding of residency was unsupported by the record.

Because the court of appeals misconstrued the controlling statute and under a proper construction the juror's continued residence in Teller County was adequately evidenced in the record, the judgment of the court of appeals is reversed and the case is remanded with directions to reinstate the defendant's convictions.

## I.

David W. White was convicted of sexual assault on a child, incest, and possession of marijuana, all arising out of a late-night sexual encounter with his daughter. After the jury had been empanelled in White's trial in Teller County, one of the jurors requested a discount at a local hotel, indicating that he had just moved to Colorado Springs, which prompted a motion for mistrial. The following morning, prior to opening statements, the juror was questioned regarding his residency.

The juror, who was then twenty-four years old, explained that despite receiving a jury summons at his father's home in Teller County, where he was living at the time, he subsequently moved to El Paso County to live with his sister; that he had been living in El Paso County for two weeks and intended to remain there for another eighteen to twenty-four months to work and complete a vocational hazmat training program organized by his employer; and that he had intermittently lived with his father in Teller County for the past nine years. On further inquiry by the prosecution, he also indicated that although his father was in the process of converting his room to a guest room, the details of which were still being worked out, he would be permitted to move back; that he left some of his furniture and other personalty at his father's home; that "mail and everything along those lines" was being delivered to his father's home; and that while he had not yet formally applied, his ultimate career plan was to return to Teller County and become a firefighter there. Finally, the juror made clear that he would like to live in Teller County, where his family was located, but that he had no plans to return there in the next year-and-a-half or two.

After entertaining the arguments of counsel, the trial court found the juror qualified and denied the motion for mistrial. The trial court relied largely on the transitional stage of life in which the juror found himself and the temporary nature of his presence in Colorado Springs for work and training. The court of appeals reversed, concluding that even if he otherwise met the statutory requirements for residency, the juror's recent move outside the county with no intention of returning during the succeeding twelve months disqualified him from service.

The People petitioned for a writ of certiorari.

## II.

Like all criminal defendants in Colorado, White was constitutionally entitled to a trial "by an impartial jury of the county or district in which the offense [was] alleged to have been committed." Colo. Const., art. II, § 16. As we have noted elsewhere, "[t]he essential features of a jury trial lie in interposing between the accused and the accuser the common sense judgment of lay representatives of the community 'and in the community participation and shared responsibility that results from that group's determination of guilt or innocence.'" *Aurora v. Rhodes*, 689 P.2d 603, 610 (Colo.1984) (quoting *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1979)). Jury summoning and selection procedures must therefore adequately provide the accused with a fair opportunity for obtaining a representative cross section of the community on the jury. *Id.* Although the legislature has not sought to determine the limits of the term "district" as it appears in Article II, Section 16 of the Colorado Constitution, *see id.* (finding municipal ordinance in multi-county municipality permitting trial of ordinance violations by jurors from anywhere within city limits to nevertheless fall within constitutional limitations); *cf. Wafai v. People*, 750 P.2d 37, 44–47 (Colo.1988) (noting venue requirement for trial within county of commission, in the absence of any separate legislative definition of "district"), it *has* directly spoken to the meaning of a jury "of the county" in which the offense was allegedly committed.

Section 105 of the Uniform Jury Selection and Service Act, §§ 13–71–101 to –145, C.R.S. (2010) (UJSSA), initially defines qualification for jury service in terms of citizenship and either residency or habitation in a particular county, and it then provides a number of specific conditions that will nevertheless disqualify an otherwise qualified prospective juror.[1] The first subsection of the

---

1. The residency-related provisions of section 13–71–105 read as follows:
   (1) Any person who is a United States citizen and resides in a county or lives in such county more than fifty percent of the time, whether or not registered to vote, shall be qualified to serve as a trial or grand juror in such county. Citizenship and residency status on the date that the jury service is to be performed shall control. (2) A prospective trial or grand juror shall be disqualified, based on the following grounds:
   . . .

statute specifies that a citizen of the United States who either "resides" in a particular county or who "lives in such county more than fifty percent of the time" shall be qualified to serve as a juror in that county. § 13–71–105(1). The second subsection, however, indicates that such an otherwise qualified prospective juror will be disqualified from service if, among other things, he resides outside the county and has no intention of returning within the succeeding twelve months. § 13–71–105(2)(e).

Although the UJSSA does not more expressly define the term "resides," "residence," or "residency," it does direct the state court administrator to create a "master juror list" of prospective jurors using for its sources lists of "residents" of the state, most particularly a voter registration list for each county in the state from the secretary of state and licensed driver lists from the department of revenue, matched against the department's most recent address of the individual for income tax purposes. *See* § 13–71–107. Unlike the UJSSA, the statutory scheme for voter registration spells out in great detail the standard for determining residence within a county, and it enumerates various factors of evidentiary significance. *See* §§ 1–2–102, –103, C.R.S. (2010); *cf.* § 31–10–201, C.R.S. (2010) (Municipal Election Code). Furthermore, it mandates that the residence given for voting purposes and those given for motor vehicle registration and for state income tax purposes must all be the same. *See* § 1–2–102(1)(c).

A person's residence for voting, motor vehicle, and income tax purposes is statutorily defined as his "principal or primary home or place of abode," which in turn is defined as "that home or place in which a person's habitation is fixed and to which that person, whenever absent, has the present intention of returning after a departure or absence, regardless of the duration of the absence." § 1–2–102(1)(a)(I). Factors to be taken into account in determining a person's principal or primary place of abode include "business pursuits, employment, income sources, resi-

dence for income or other tax purposes, age, marital status, residence of parents, spouse, and children, if any, leaseholds, situs of personal and real property, existence of any other residences and the amount of time spent at each residence, and motor vehicle registration." § 1–2–102(1)(b). Significantly, for these purposes no person can be considered to have gained a residence in any county while retaining a home or domicile elsewhere; and no person can gain a residence by reason of his presence, or lose it by reason of his absence, while a student at an institution of higher education. §§ 1–2–102(1)(d), –103(1).

### III.

Within constitutional limitations, the legislature determines qualifications for jury service. As is the case with statutes generally, the proper interpretation of any applicable juror qualification statutes must therefore be determined according to legislative intent, as expressed in the language of the statutes themselves. *People v. Owens,* 228 P.3d 969, 972 (Colo.2010). Where statutory language is susceptible of more than one reasonable interpretation, and is therefore ambiguous, a body of accepted intrinsic and extrinsic aids to construction may be applied to determine the particular reasonable interpretation embodying legislative intent. *Holcomb v. Jan–Pro Cleaning Sys.,* 172 P.3d 888, 890 (Colo.2007). Although a term may have a number of different meanings in the abstract, or standing alone, its intended meaning in a specific context will often become apparent from the context, or the greater statutory scheme, in which it is used. *Curious Theatre Co. v. Colo. Dep't. of Pub. Health and Env't,* 220 P.3d 544, 549 (Colo. 2009); *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 n. 6, 1046 (Colo.1991). Similarly, the historical development of a statutory scheme can often shed light on the purposes behind specific amendments. *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 448 (Colo. 2005).

---

(e) Residence outside of the county with no intention of returning to the county at any time

during the succeeding twelve months....

Throughout most of this state's history, jury service has been limited to residents of the county in which a crime was alleged to have been committed. *E.g.,* C.R.S.1963, § 78–1–2. In 1989, along with the repeal and reenactment of the UJSSA to accommodate the so-called "one day, one trial" approach adopted for this jurisdiction, the legislature eliminated non-residence as a disqualifying condition and instead permitted, subject to certain exceptions, any person to serve who is a United States citizen and resides in the county or lives in the county more than fifty percent of the time. § 13–71–105(1). Among the statutory exceptions or enumerated conditions disqualifying an otherwise qualified person, the legislature included having a "[r]esidence outside the county with no intention of returning within twelve months." § 13–71–105(2)(e).

Despite the dearth of published appellate decisions concerning juror qualifications, the meaning and proof of "residence" in related contexts had plagued the courts of this jurisdiction for years. *See Theobald v. Byrns,* 195 Colo. 330, 333, 579 P.2d 609, 610–11 (1978). The current principal-or-primary-home test for voting purposes, largely adopted by the legislature in 1979 and now expressly made applicable to motor vehicle and income tax matters as well, however, clearly resolves this ambiguity in favor of an objectively determined "legal residence" or domicile. *See Gordon v. Blackburn,* 618 P.2d 668, 671 (Colo.1980) (interpreting section 1–2–102's counterpart for municipal elections, section 31–10–201). Apart from expressly designating voter registration, driver's license, and income tax lists as sources of prospective jurors, the very structure of the UJSSA, juxtaposing "resid[ing]" in the county, on the one hand, and "liv[ing]" in the county for a specified period, on the other, as alternate ways of satisfying the vicinage or proximity requirement, rather than conjoining them as joint prerequisites, also strongly implies that the term "resides" is used in the same domiciliary sense.

▮ A person is therefore domiciled, or "resides," in a given county within the meaning of the UJSSA if his principal or primary home or place of abode—the home or place

in which his habitation is fixed and to which he has the present intention of returning after a departure or absence, regardless of the duration of the absence—is situated there. After the 1989 amendments, however, that person is also qualified to serve as a juror if he lives in the county more than fifty percent of the time, subject to one important qualification. Presumably because the condition of living somewhere more than fifty percent of the time could reasonably be understood to include any period of absence from that dwelling not exceeding the length of time a prospective juror had previously been living there, a person is nevertheless expressly disqualified from jury service if he both absents himself with no intention of returning to live in the county within twelve months and maintains his legal residence outside the county. While the exception of subsection 105(2)(e) therefore places a limitation on the period of time a person can be physically absent and still be considered to *live* in the county more than fifty percent of the time, it in no way purports to alter the meaning of residency.

▮ Beyond these syntactical considerations, statutory definitions, and interlocking statutory schemes, interpreting the existing juror qualification statute as providing for broad-based juror eligibility on the basis of either majority presence in the county or maintaining a domicile there comports with both the realities of our contemporary mobile culture and the extremely minimal nature of constitutional vicinage requirements. Ensuring that jury verdicts result from the common sense judgment of lay representatives of the community and that an accused is provided with a fair opportunity for obtaining a representative cross section of the community on the jury, *see Rhodes,* 689 P.2d at 610, is in no way furthered by hyper-restrictive residency requirements. Especially in a state with a substantial military presence, numerous institutions of higher education, and widespread ownership of dwellings in more than one county by a single person, it would not be unnatural or unexpected for the legislature to require jury service of those who live in the county most of time, as well as those who maintain a domicile, or legal resi-

dence, there. As long as the scheme permits reasonable flexibility in excusing or deferring service for those in either category currently absent from the area, less restrictive residency requirements can easily be understood as a rational policy choice and advantageous for all concerned.[2]

■ While the juror in this case may not have actually qualified as a student at an institution of higher education, his age and unsettled stage of both education and employment point away from any intent to change his domicile by fixing his place of habitation elsewhere. It seems clear that he had not previously established a domicile other than his father's home, and that since moving in with his sister in recent weeks, he had not moved his furniture or changed his mailing address from his father's home. Not only did the juror express a subjective intent to return to Teller County where his family lived, if and when that became a viable option, but there was no evidence to indicate that during the short time of his absence from the county, he had taken any steps, such as changing the address on his vehicle registration and driver's license, objectively evidencing a change in his legal residence.

■ The court of appeals found dispositive the fact that the juror had moved from the county and intended to remain outside the county until he completed his hazmat training, some eighteen to twenty-four months later. As we have construed the statute, the disqualification articulated at section 13–71–105(2)(e), applies only to persons who both absent themselves from the county without any present intention to return within twelve months and *also* establish a domicile outside the county. *Accord People v. Williams,* 827 P.2d 612, 613–14 (Colo.App. 1992). A present intention to return, regardless of the duration of any absence, is the critical factor establishing that a person's former dwelling remains his principal or primary home, or legal residence, despite his having temporarily moved from it. In the absence of a determination that the juror was no longer domiciled in Teller county, the court of appeals therefore erred in relying on the exception at subsection 105(2)(e).

Because the record in this case is adequate for us to determine that the juror continued to maintain a domicile at his father's home in Teller County, it is unnecessary for us to consider the People's claim that the defendant waived any challenge to his credentials by not asserting it before the jury was empanelled.

## IV.

Because the court of appeals misconstrued the controlling statute and under a proper construction the juror's continued residence in Teller County was adequately evidenced in the record, the judgment of the court of appeals is reversed and the case is remanded with directions to reinstate the defendant's convictions.

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice MARTINEZ, dissenting.

I respectfully dissent because I cannot agree with the majority's interpretation of section 13–71–105 or its reliance on the principal-or-primary-home test to determine the residency, and hence qualification, of Juror C. Rather, I would resolve the instant case based on the text of section 13–71–105(1) alone.

Section 13–71–105(1) sets forth two alternate criteria for determining residency status. A United States citizen who "resides" in a county or "lives in such county more than fifty percent of the time" shall be qualified to serve as a trial juror in such county. § 13–

**2.** At the time the legislature chose to include both maintaining a residence and living in the county more than half the time as alternate qualifications for jury service, the statutory scheme permitted the jury commissioner to excuse service for either hardship or inconvenience. *See* § 13–71–119, C.R.S. (1990). Although it continues to permit deferral for six months upon request, *see* § 13–71–116, C.R.S. (2010), the scheme was amended in 2004 to delete "inconvenience" as an excuse and to more restrictively define "hardship," *see* Ch. 86, sec. 4–6, 2004 Colo. Sess. Laws 276–79. In this case we need not speculate about the effect of the 2004 amendments on otherwise qualified prospective jurors temporarily located a great distance from the county when they are called.

71–105(1), C.R.S. (2010). At the time of the trial, the record clearly showed that Juror C had moved to Colorado Springs (El Paso County) to live with his sister. Moreover, there was no evidence that Juror C lived in Teller County with his father. To the contrary, Juror C explained to the trial court that he had recently moved out of his father's house in Woodland Park (Teller County). Thus, even though section 13–71–105(1) does not explain precisely how to calculate whether a person has lived in a county "fifty percent of the time," at the time of trial Juror C certainly did not live in Teller County more than fifty percent of the time; rather, he did not live in Teller County at all.

Juror C also lacked the necessary intent to return to his father's house in Teller County and be deemed to legally "reside" there. Neither section 13–71–105(1) nor the Colorado Uniform Jury Selection and Service Act ("UJSSA") provides an express definition for the term "reside" or "residency." Generally however, legal residence carries with it a notion of intent. More specifically, a person must have an intent to either establish a legal residence or return to a legal residence within the foreseeable future. Here, Juror C lacked any concrete plans to return to his father's house in Teller County. True, Juror C had not yet made arrangements for his mail to be delivered to Colorado Springs and could return to his father's house if he needed to get his finances changed someday. Moreover, as the trial court apparently found relevant, Juror C was in transitional stage in his life—meaning that he "really doesn't know where he's going to end up." Pointedly though, Juror C specifically explained that he had no intention of returning to Teller County within the next year-and-a-half. On this record then, it is apparent that Juror C lacked a present intent to return to Teller County—a necessary mindset to qualify as a legal resident of that county for the purposes of section 13–71–105(1).

Nonetheless, despite Juror C's lack of intent to return to Teller County within the next year-and-a-half, the majority concludes that Juror C remained a resident at his father's home in Teller County. To arrive at this conclusion, the majority relies heavily on the statutory definition of residence used to determine voter registration qualifications. *See* § 1–2–102; *cf.* § 31–10–201 (Municipal Election Code). Pursuant to section 1–2–102(1)(a)(I) of the Uniform Election Code of 1992, "[t]he residence of a person is the principal or primary home or place of abode of a person." In turn, a person's principal or primary home is where "the person's habitation is fixed and to which that person, whenever absent, has the present intention of returning...." *Id.* Present intent is therefore of prime importance in determining legal residence for voting purposes. *See Gordon v. Blackburn*, 618 P.2d 668, 672 (Colo. 1980).

Based on the Uniform Election Code's definition of residence, the majority concludes that Juror C was a resident of Teller County for the purposes of the UJSSA. Apparently, Juror C's principal or primary home was fixed at his father's residence in Teller County. Thus, regardless of the fact that Juror C moved out of his father's home and had no intent to return within the next year-and-a-half, he nonetheless remained a resident of his father's home and Teller County. Surely though, Juror C's indefinite intent to return to Teller County is insufficient to establish legal residence for the purposes of voter registration or juror qualification. *See id.* ("The mere intention to return to a former abode at some more or less indefinite time, with no other indicia of a home or domicile, may not fulfill the usual requirements of 'legal residence' for voting purposes.").

More problematic, however, is the lack of textual support for the majority's reliance on the principal-or-primary-home test. Section 13–71–105 does not define "reside" or "residence," let alone mention a person's principal or primary home. In this respect, the UJSSA contrasts sharply with the Uniform Election Code of 1992 which expressly references the principal-or-primary-home test and spells out in great detail the circumstances for determining residence. *See* § 1–2–103. The UJSSA's silence counsels strongly against the majority's wholesale adoption of the principal-or-primary-home test.

Moreover, section 13–71–105 does not cross-reference the Uniform Election Code,

let alone the principal-or-primary-home test found in section 1–2–102(1)(a)(I). True, section 13–71–107 does designate voter registration, income tax, and motor vehicle registration lists as potential sources for a master list of jurors. However, the designation of source material for a master juror list has no bearing on the definition of "reside" and cannot provide the loophole for importing the principal-or-primary-home test into the UJSSA.

Finally, the majority makes an unnecessary policy decision to adopt the principal-or-primary-home test in the context of juror residency status. On the one hand, the principal-or-primary-home test may provide for broad-based juror eligibility and thereby comport with the realities of our contemporary mobile culture. On the other hand though, the principal-or-primary-home test may ensnare jurors located at a great distance from the county where they are called. In drafting section 13–71–105(1), the legislature did not address these competing policies, opting instead to omit any specific definition or test for residency. In the instant case, there is no need for this Court to make the policy determination necessary to explain its rationale for adopting a definition of residence found in another entirely different statute. Instead, based on the text of section 13–71–105(1) alone, Juror C neither "reside[d]" in Teller County nor "live[d] in such county for more than fifty percent of the time." Accordingly, because I conclude that Juror C was not a qualified juror in Teller County, I respectfully dissent.

I am authorized to state that Justice BENDER joins in this dissent.