John HOLCOMB, Petitioner

v.

**JAN–PRO CLEANING SYSTEMS OF SOUTHERN COLORADO,**
Respondent.

No. 06SC757.

Supreme Court of Colorado,
En Banc.

Dec. 17, 2007.

Lisa W. Stevens, Monument, Colorado, Max G. Margulis, Chesterfield, Missouri, Attorneys for Petitioner.

Allen & Vellone, P.C., Mark A. Larson, Kevin D. Allen, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Holcomb petitioned for review of a judgment of the district court affirming the county court's verdicts in favor of Jan–Pro on two claims of committing deceptive trade practices. The county court magistrate found that Jan–Pro had not violated the Colorado No–Call List Act for the reason that Jan–Pro fell within a defense for callers who have established procedures to prevent solicitations in violation of the Act. Although it affirmed, the district court held simply that by using his phone for business purposes, Holcomb had removed himself from the protected class of residential subscribers and was therefore no longer entitled to the protections of the Act.

Because the unambiguous language of the statute includes Holcomb within the class of residential subscribers protected by the no-call list, the district court erred, and its judgment is reversed.

**I.**

John Holcomb filed claims in the Small Claims Division of the County Court, as per-

mitted by the Colorado No–Call List Act,[1] alleging that Jan–Pro Cleaning Systems of Southern Colorado committed deceptive trade practices by violating both the registration and no-call provisions of the Act. Undisputed testimony at a trial to the county court magistrate indicated that Holcomb subscribed to residential telephone service with a local exchange provider, within the meaning of the Act, and that Jan–Pro had solicited him regarding its cleaning services, over a telephone for which he had subscribed to residential service. It was also uncontested, however, that Holcomb sometimes used his residential telephone to make business calls and that Jan–Pro had acquired his telephone number from a calling list of business numbers obtained from Info USA and Dun & Bradstreet. Jan–Pro's representative testified that it chose not to register with the Colorado Secretary of State as a telemarketing business because it had no intention of marketing to residences.

Following trial to the court, the magistrate ruled against Holcomb on both claims. Without making specific findings of fact or conclusions of law about the no-call prohibition itself, the magistrate found that Jan–Pro fell within a statutory defense for callers who establish written practices and procedures to effectively prevent themselves from inadvertently violating the Act. It also found that as a solicitor of businesses only, Jan–Pro was not required by the Act to register as a telephone solicitor. Holcomb appealed the judgment to the district court on both counts.

Acting in its appellate capacity, the district court affirmed the judgment below. Rather than addressing the magistrate's finding of a statutory defense, however, the district court construed the statute to completely exclude from the Act's protected class of residential subscribers any person listing his telephone number both as a residential phone and as a business phone, despite having subscribed to residential telephone service with a local exchange provider, in compliance with the Act. The district court therefore concluded that Jan–Pro had not solicited a "residential subscriber" within the meaning of the Act, despite soliciting Holcomb on a telephone for which he had subscribed to residential service and the number of which he had added to the official Colorado no-call list. Similarly, it agreed with the magistrate that the registration requirements of the Act did not apply to Jan–Pro because there was no evidence that it solicited residential subscribers.

Holcomb petitioned this court for a writ of certiorari, seeking reversal of the district court's ruling.[2]

## II.

Part 9 of the Colorado Consumer Protection Act, *see* title 6, article 1, of the Colorado Revised Statutes, is designated the "Colorado No–Call List Act." The Act provides for the creation of a list, or database, of residential subscribers and wireless telephone service subscribers who object to receiving telephone solicitations, *see* § 6–1–905(1);[3] and it bars as a deceptive trade practice any telephone solicitation to the telephone of a residential subscriber or wireless service subscriber in this state who has added his number and zip code to the Colorado no-call list, *see* § 6–1–904(1)(a).[4] As used in the

---

1. *See* §§ 6–1–901 to–908, C.R.S. (2007).

2. The precise question on which we granted certiorari was:

 Whether the district court erred by adding a use test to the Colorado No–Call laws by concluding that Petitioner removed his residential subscriber home telephone number from No–Call protection because Petitioner uses his residential subscriber home telephone for personal and office use, when the legislature passed the No–Call Act to protect the statutorily defined classification of residential subscriber with use of a home telephone being irrelevant.

3. Section 6–1–905(1), C.R.S. (2007), states:

The Colorado no-call list program is hereby created for the purpose of establishing a database to use when verifying residential subscribers and wireless telephone service subscribers in this state who have given notice, in accordance with rules promulgated under paragraph (b) of subsection (3) of this section, of such subscribers' objection to receiving telephone solicitations. The program shall be administered by the public utilities commission.

4. Section 6–1–904(1)(a), C.R.S. (2007), states:

No person or entity shall make or cause to be made any telephone solicitation to the telephone of any residential subscriber or wireless telephone service subscriber in this state who

Act, "residential subscriber" is a statutorily-defined term of art, which expressly includes any person who has subscribed to residential telephone service with a local exchange provider. *See* § 6–1–903(9).[5]

Nothing in the provision establishing and prescribing the operation of the no-call list, *see* § 6–1–905; the proscription against soliciting residential subscribers on the list, see § 6–1–904; or the definition of "residential subscriber" itself, *see* § 6–1–903(9), suggests that using a no-call listed telephone for business purposes or permitting it to appear on commercial telephone listings causes an otherwise qualifying "residential subscriber" to somehow lose the protections of the Act. And nowhere does the district court suggest a construction of the language of these provisions that might lead to that conclusion. Instead, without embellishing on its significance, the district court's written ruling appears to rely exclusively on a sentence from the Act's declaration of legislative purpose, indicating that "[i]ndividuals' privacy rights and commercial freedom of speech should be balanced in a way that accommodates both the privacy of individuals and legitimate telemarketing practices." *See* § 6–1–902(1)(c).

 A court's objective in interpreting statutes is to determine the intent of the legislature, as expressed in the language of the statute itself. *Martinez v. People,* 69 P.3d 1029, 1031 (Colo.2003). If the language in which a statute is written is susceptible of more than one reasonable interpretation, and is therefore ambiguous, a body of accepted intrinsic and extrinsic aids to construction may be applied to determine the particular reasonable interpretation embodying the legislative intent. *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 448 (Colo.2005). If a statute is clear and unambiguous, however, and is not in conflict with other statutes, it must be applied as written. *Sooper Credit Union v. Sholar Group Architects, P.C.,* 113 P.3d 768, 771 (Colo.2005).

Even if a general declaration of legislative policy could create, rather than merely help resolve, ambiguity in or conflicts among specific definitional or proscriptive provisions, no ambiguity or conflict exists here. The legislative declaration makes clear that the General Assembly's goal was to "establish a mechanism under which the individual citizens of this state can decide whether or not to receive telephone solicitations by phone or fax." § 6–1–902(1)(e). While the legislative declaration also identifies the competing interests the General Assembly considered necessary to balance in order to accomplish that goal, the statute does not purport to dilute or further limit the specific proscription it imposes against soliciting numbers from the statutory no-call list.

The statutory scheme actually adopted by the General Assembly unambiguously evidences the balance it has struck to accommodate these competing interests. In no uncertain terms, it specifies precisely who qualifies as a "residential subscriber;" how a residential subscriber can have his telephone number placed on the official no-call list; and when soliciting a number on that list is proscribed as a deceptive trade practice. The Act also specifically provides two, but only two, grounds for excusing conduct that would otherwise amount to a violation.

The Act excuses calls resulting from errors in transcription or other technical defects, and it also provides a complete defense for callers who have otherwise fully complied with the requirements of the Act and have, in addition, both established and implemented written practices and procedures to effectively prevent violations. *See* § 6–1–906(2). While the Act does not further prescribe those practices and procedures, it does specify that "persons or entities desiring to make telephone solicitations shall update their copies of the Colorado no-call list, conforming consolidated no-call list,[6] or a list obtained

---

has added his or her telephone number and zip code to the Colorado no-call list in accordance with rules promulgated under section 6–1–905.

**5.** " 'Residential subscriber' means a person who has subscribed to residential telephone service with a local exchange provider, as defined in section 40–15–102(18), C.R.S. 'Person' also in-

cludes any other persons living or residing with such person." § 6–1–903(9), C.R.S. (2007).

**6.** " 'Conforming consolidated no-call list' means any database that includes telephone numbers of telephone subscribers that do not wish to receive telephone solicitations, if such database has been

from a conforming list broker within thirty days after the beginning of every calendar quarter, on or after July 1, 2002...." *See* § 6–1–904(4). In this way, the legislature makes clear its choice to protect commercial speech by providing telephone solicitors with a definitive and accessible list of all those numbers that may not be called, while simultaneously imposing on them the burden of maintaining and requiring consultation of the list to avoid noncompliance with the Act.

## III.

■ The district court found that by listing his telephone number both as a residential phone and as a business phone, Holcomb removed his telephone number from the definition of a residential subscriber. It therefore concluded that Holcomb was not entitled to the protections of the Colorado no-call list for residential subscribers and, similarly, that Jan–Pro was not obliged to register as a telephone solicitor before soliciting business on his number. Whether the district court mistakenly believed the Act provides for a separate and competing list of business subscribers, or merely that the appearance of one's residential telephone service number on a commercial listing of business numbers excludes him from the statutory definition of "residential subscriber" and the protections of the no-call list, it misconstrued the regulatory scheme and erred on both counts.

Believing, however, that it had adequately disposed of the matter on alternate grounds, the district court declined to address Holcomb's challenge to the county court magistrate's finding of a statutory defense, and that assignment of error remains at issue. Although the defense found at section 6–1–906(2)(a) applies, on its face, only to persons or entities that have otherwise fully complied with the provisions of the Act and have both established and implemented written practices and procedures to effectively prevent telephone solicitations in violation of the Act, the magistrate's oral ruling indicated merely that Jan–Pro was entitled to rely on a commercially purchased list of purported business numbers. It is not readily apparent from the record that Jan–Pro even considered itself obligated to consult the official Colorado no-call list, much less that it implemented written procedures to ensure that its agents did so and that it otherwise complied with the requirements of the Act. Because the magistrate's findings do not conclusively resolve the question of the statutory defense as a matter of law, and because that issue was not included in the grant of certiorari and has therefore not been briefed or argued to this court, it must be addressed by the district court on remand.

## IV.

The judgment of the district court is therefore reversed, and the case is remanded with directions to address the magistrate's finding of a statutory defense and any other remaining issues properly raised on appeal.

Justice HOBBS dissents and Chief Justice MULLARKEY and Justice RICE join in the dissent.

Justice HOBBS, dissenting.

I respectfully dissent. I would affirm the judgment of the district court, but on other grounds. The district court concluded that Holcomb had removed himself from the no-call list by publishing his residence phone number as his business number. In contrast, the county court, in its on-the-record colloquy and ruling, reasoned that Holcomb had made out a prima facie case that Jan–Pro had violated the no-call statute by calling his residential number, but did not carry his burden of proving a violation of the statute because, under the facts of this case, Jan–Pro's phone contact was within the exception of section 6–1–906(2)(a), C.R.S. (2007).

In my view, the county court's construction of the no-call statute and its judgment were correct, given the facts of this case. Accordingly, the district court should have affirmed the county court's findings of fact and conclusions of law instead of introducing the unwarranted statutory theory that "by listing his

updated within the prior thirty days to include all of the telephone numbers on the Colorado no-

call list." § 6–1–903(3), C.R.S. (2007).

telephone number both as a residential phone and as a business phone, Plaintiff has removed this telephone number from the definition of a residential subscriber and from the protection of the Colorado no-call list."

Under the facts of this case, we should disapprove of the district court's legal reasoning while nevertheless upholding its ultimate legal conclusion that Jan–Pro did not violate the no-call statute in placing its call to Holcomb's phone number.

## I.

The facts upon which the county court based its decision include that Jan–Pro is a franchised, small, family-owned janitorial business serving southern Colorado. By its franchise agreement, Jan–Pro must limit its cleaning services to business offices. Thus, Jan–Pro has no business interest in contacting potential residential customers. In identifying potential business customers, Jan–Pro purchases phone lists of businesses compiled by Dun & Bradstreet and by Info USA.

Holcomb is an attorney who operates a real estate business out of his home. He has chosen not to purchase a separate business phone number; instead, in conducting his business, he publishes his residential phone as his business phone.

Jan–Pro obtained the phone number of one of Holcomb's businesses, "Attorney Realty," from the Dun & Bradstreet and Info USA lists of business phone numbers. On December 12, 2005, a Jan–Pro employee called this number and Holcomb answered. Holcomb asked the caller to fax him information about Jan–Pro's business, which the representative of Jan–Pro did.

Holcomb then instituted a county court action against Jan–Pro, reciting in his Notice, Claim, and Summons to Appear for Trial the following allegation:

On December 12, 2005 at 9:32 a.m., defendant's representative "Allison" solicited plaintiff's residential subscriber telephone number, and therefore, defendant owes plaintiff $500.00 for violating Colorado No–Call law C.R.S. 6–1–904(1)(a) and another $500 for violating C.R.S. 6–1–904(b) as specifically provided by C.R.S. 6–1–105(tt).

Appearing pro se, Becky Kolb, President of Jan–Pro, sent a letter to the county court in response to this claim, which states in part:

We are a commercial janitorial company that solicits businesses which are exempt from the no-call registry. We do not offer residential services and have no reason to contact residential numbers. We purchase business telemarketing leads from Dun and Bradstreet and from Info USA. We specify businesses that we want to be included and exclude residences as well as some business entities. We have on occasion found that a business listing is actually a home based business and once we learn that, the contact is deleted from our call list.

Mr. Holcomb's name was on a list purchased in 2004 with a company name "Attorney Realty" with the number [deleted in this recitation but included in Kolb's letter to the court]. In the normal course of calling, Allison La Madrid contacted the firm "Attorney Realty" in good faith that this was a legitimate Real Estate Office. We use a data base to record results from these calls. On December 22, 2006, Allison La Madrid recorded a note that she had spoken with Mr. Holcomb and that he requested that we fax him information about our cleaning service which she did. She followed up on December 29, 2006 as a result of his request for information as she assumed that there was an interest in our service. During that follow up call, Allison recorded that Mr. Holcomb asked for a website to verify Jan Pro as a legitimate company. Other businesses have requested similar information prior to setting an appointment and it did not appear out of the ordinary to comply with his request. At no time in either conversation did Mr. Holcomb disclose that this was a residence or that he was on a no call registry. At no time did he request that we not call again—he instead encouraged a call by pretending to be interested in our service, when in, fact, he was gathering data to file a suit.

Pursuant to the simplified procedure applicable in the small claims jurisdiction of the

county court, the court held a bench trial on April 18, 2006, at which Holcomb and Kolb were the only witnesses.

The theory of Holcomb's claim in the county court, the district court, and now before this court is that Jan–Pro violated the no-call statute by placing a call to Holcomb's no-call listed residential phone number, regardless of the fact that he had published that number as his business number and despite Jan–Pro's internal procedures for restricting its janitorial service to businesses and contacting only potential customers who had published a business number.

At trial, Holcomb called Kolb as a witness to verify that a Jan–Pro employee made the phone call. Jan–Pro did not dispute that its employee made the phone call. In answering Holcomb's examination and in presenting Jan–Pro's own evidence, Kolb verified facts she had set forth in her letter to the county court when responding to Holcomb's notice of claim and summons. She testified to Jan–Pro's internal procedure for obtaining and calling businesses in the southern Colorado area that might be interested in its cleaning service. Holcomb had several businesses for which he used his residence number as his business number that might have been included on business phone lists[1] such as those compiled by Info USA:

> You know ... from Google phone numbers ... he's Virtual Business Services ... Holt Realty ... Attorney Realty ... Mortgage Max. There's all kinds of businesses on here. Info USA could easily pick up one of these other businesses on here.

The county court record contains a long colloquy between the court and Holcomb regarding his theory of the case, with Kolb occasionally speaking as well. The county court focused on the fact that Holcomb advertised his residential number as his business number, and that Jan–Pro had a reasonable internal procedure it had followed in placing its call to Holcomb's business, Attorney Realty. The county court indulged every argument Holcomb made, but ultimately concluded that, while Holcomb made out a

prima facie case for violation of the statute, he failed to carry his burden of proving the violation in light of section 6–1–906(2)(a), C.R.S. (2007).

Instead of analyzing the elements of the statute as the county court did through its colloquy and ruling—first considering the plaintiff's prima facie case, then shifting to the defense's burden of going forward, while holding the plaintiff to his burden of establishing the existence of a violation of the no-call statute by a preponderance of the evidence—the district court erroneously articulated a construction of the statute whereby a residential subscriber effectively removes himself or herself from the no-call list by using his or her residential number as a home business number.

I agree with the majority that the district court's legal rationale does not withstand statutory scrutiny. Nevertheless, the district court reached the correct legal conclusion that Jan–Pro did not violate the no-call statute, and we should be upholding its judgment on other grounds, namely by deferring to the county court's findings of fact and upholding its construction of the statute.

## II.

### Construction of the No–Call Statute As Applied to This Case

Throughout this case before the county court, the district court, and now before this court, Holcomb takes a view of the no-call statute that allows him to receive at his residential phone number business calls he likes and to prosecute those he does not. Given its plain language, such a cramped and punitive view of the statute is not supported. To the contrary, the General Assembly intended a common sense balancing of interests that allows a business in Jan–Pro's circumstances to make a one-time business call without violating the statute.

The three provisions of the no-call statute that interplay in this case are as follows:

---

1. I would take judicial notice of the fact that the phone number called by Jan–Pro is also published in the 2008 Colorado Legal Directory under Holcomb's name identifying his business as Holcomb Realty Group.

Individuals' privacy rights and commercial freedom of speech should be balanced in a way that accommodates both the privacy of individuals and legitimate telemarketing practices ...

§ 6–1–902(1)(c), C.R.S. (2007).

No person or entity shall make or cause to be made any telephone solicitation to the telephone of any residential subscriber or wireless telephone service subscriber in this state who has added his or her telephone number and zip code to the Colorado no-call list in accordance with rules promulgated under section 6–1–905.

§ 6–1–904(1)(a), C.R.S. (2007).

On and after July 1, 2002, violation of any provision of this part 9 constitutes a deceptive trade practice under the provisions of section 6–1–105(1) and may be enforced under sections 6–1–110, 6–1–112, and 6–1–113. No state enforcement action under this part 9 may be brought against a person or entity for fewer than three violations per month.[2]

*Notwithstanding subsection (1) of this section, it shall not be a violation of this part 9 if:* (a) The person or entity has otherwise complied with the provisions of this part 9 and has established and implemented, prior to the violation, written practices and procedures to effectively prevent telephone solicitations in violation of this part 9....

§ 6–1–906(1), (2)(a) (emphasis added).

When construing a statute, our primary purpose is to ascertain and effectuate the intent of the General Assembly. *People v. Weiss,* 133 P.3d 1180, 1184 (Colo.2006). First, we look to the plain and ordinary meaning of the statutory language to determine the legislative intent. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006). "If the statutory language is clear, we apply the plain and ordinary meaning of the provision." *Weiss,* 133 P.3d at 1184. We do not add words to the statute or subtract words from it. *Colo.*

*Dep't of Revenue v. Hibbs,* 122 P.3d 999, 1004 (Colo.2005).

As the facts of this case demonstrate, reading the applicable statutory provisions together, we should arrive at the common sense construction that the county court in its on-the-record colloquy and ruling gave to Colorado's no-call statute. Thus, the proper construction of the no-call statute, as found by the county court, is as follows: (1) that the plaintiff establishes a prima facie case of violation upon proof that the defendant has made a business solicitation call to a residential service number that is on the no-call list, at which time; (2) the burden of going forward shifts to the defendant caller to demonstrate facts showing that the call did not violate the act; and (3) the burden of proof is always on the plaintiff to prove by a preponderance of the evidence that the defendant's call violated the no-call act. *See Wolford v. Pinnacol Assurance,* 107 P.3d 947, 951 (Colo. 2005) (discussing in general the means a court utilizes to interpret statutes); *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1057 (Colo.1992) (discussing the civil burden of proof and establishing guilt by a preponderance of the evidence); *Exch. Nat'l Bank of Colo. Springs v. Sparkman,* 191 Colo. 534, 538, 554 P.2d 1090, 1093 (1976) (stating that the burden of proof does not shift, even after a prima facie case has been established).

That this three-step process implements the General Assembly's plainly intended meaning is underscored by section 6–1–906(2)(a)'s provision for factual circumstances, under which a call by a business to a purported business phone number, for example, should "not be a violation" of the no-call statute "notwithstanding" any other provision of the statute. The word "notwithstanding" in a statute has meaning, just as the word "shall" does, and must be given effect. We do not assume that the General Assembly used language idly; rather we must give effect to the statute's words and terms. *State Dep't of Labor & Employment v. Es-*

---

**2.** It is significant that the General Assembly has prevented public enforcement of the no-call statute for fewer than three violations per month. Holcomb assumes that this provision means that a private enforcement action can be brought for less than three violations per month. Instead, the statute is silent on this point; in my view, the legislature did not intend that one call would constitute a violation of the statute under the circumstances of a case like this. *See* § 6–1–906(1), (2)(a), C.R.S. (2007).

*ser,* 30 P.3d 189, 196 (Colo.2001); *see also Pulsifer v. Pueblo Prof'l Contractors, Inc.,* 161 P.3d 656, 659 (Colo.2007) (interpreting a statute with "notwithstanding" language).

In addition, section 6–1–902(1)(c) plainly states that an individual's "privacy rights and commercial freedom of speech should be balanced in a way that accommodates both the privacy of individuals and legitimate telemarketing practices." That the General Assembly intended such a balancing in the context of particular cases, not just as a statement of the statute's general goals, is evident by the inclusion of section 6–1–906(2)(a)'s factually-oriented statutory "notwithstanding" provision of non-violation. Under this provision, a business to business call is not a violation of the no-call statute when the calling business has adopted and follows an internal written procedure reasonably calculated to include only other businesses.

In the case before us, Holcomb exposed himself to the statute's balancing privacy and commercial speech rights by publishing his residential number as his business number. Having chosen to do so, he cannot positively entertain only the business calls he likes and prosecute, as a violation of the no-call statute, those he does not. As Jan–Pro's President, Becky Kolb, acting pro se throughout these proceedings, points out, all Holcomb had to do was ask not to be called again and Jan–Pro, under its policy to solicit businesses only, would not have called him again.

In my view, Holcomb's "gotcha for calling" view of this case and this statute is not justified. Previously, Holcomb has sued two other companies based on similar facts.[3] He is an attorney who prosecuted a Colorado small business at the county court, district court, and supreme court levels. He hired another attorney to represent him in the district court and on certiorari before us. Jan–Pro appeared pro se in the county court and district court, and initially before us, when it had to respond to Holcomb's certio-

rari petition. It then hired an attorney for the briefing and oral argument before us.

Had Jan–Pro been represented by counsel when it responded to the certiorari petition, counsel might have suggested filing a cross-petition highlighting the county court's construction of the statute and its finding of no-violation pursuant to section 6–1–906(2)(a). Nevertheless, Jan–Pro's pro se response to the certiorari petition plainly preserves the argument it has made throughout the entire duration of this case—it reasonably made one business call to what it thought was another business that might want to use its janitorial service, and in doing so, it utilized and followed a reasonable internal procedure for limiting its calls to businesses only.

The record, lower court rulings, briefs in the lower courts, and oral argument in this case sufficiently put at issue whether Jan–Pro committed a violation of the no-call statute. In my view, we should not prolong this case. For purposes of judicial economy, including efficiency, fairness, and to prevent needless litigation, we should address all the substantive issues presented in this case. *See Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1364 (Colo.1993) (retaining jurisdiction to decide an issue rather than remanding to the court of appeals as a matter of judicial economy); *see also Bd. of County Comm'rs County of Archuleta v. County Rd.,* 11 P.3d 432, 440 (Colo.2000) (addressing an issue, instead of remanding it, in the interest of judicial economy).

We defer to a lower court's findings of fact if they are supported by the record and review a lower court's legal conclusions de novo. *In re Vought,* 76 P.3d 906, 913 (Colo. 2003). The county court's judgment is well-supported by the facts and the law, and we should uphold it by affirming the district court's ultimate conclusion that Jan–Pro did not violate the no-call statute, albeit on different legal grounds than the district court articulated.[4]

---

**3.** *See Holcomb v. Steven D. Smith Inc.,* 170 P.3d 815 (Colo.App.2007); *Holcomb v. Shred-it,* No. 06CV4589, filed in El Paso County Ct., Oct. 6, 2006.

**4.** Holcomb also contended in the county court and district court that Jan–Pro was required to

register as an entity *that solicits residential subscribers* under § 6–1–904(1)(b), which states, "[A]ny person or entity that makes a telephone solicitation to the telephone of any residential

The county court found that Jan–Pro—by purchasing from reputable companies a list of business phone numbers, requesting listings only by specific SIC codes, and asking that home-based businesses be omitted—established and implemented, prior to this particular call, written practices and procedures to effectively prevent telephone solicitations in violation of the statute. The county court found that Jan–Pro reasonably relied on the lists it purchased as having only business phone numbers, it had utilized the lists for four years without incident, and it would have deleted Holcomb from its call list had he simply asked. The county court's findings are reasonable and supported by the record. Thus, the district court's judgment affirming the county court's judgment should be upheld, but on different grounds.

Accordingly, I respectfully dissent.

I am authorized to say that CHIEF JUSTICE MULLARKEY and JUSTICE RICE join in this dissent.

subscriber or wireless telephone service subscriber in this state shall register ...." (emphasis added). I agree with the county court and district court's factual and legal conclusions that Jan–Pro was under no such obligation because it does not operate as a solicitor of residential subscriber lines. The majority cites § 6–1–904(4), which states that "persons or entities desiring to make telephone solicitations shall update their copies of the Colorado no-call list...." Maj. op. at 894–95. In my view the majority errs by not addressing § 6–1–904 in its entirety, specifically § 6–1–904(1)(b), which limits the entities that must register to those soliciting residential subscribers.