The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 27, 2020

## 2020COA130

**No. 19CA1144, *Welch v. Colorado State Bd. of Plumbing* —
Professions and Occupations — Plumbers — Apprentices;
Constitutional Law — Due Process**

A division of the court of appeals considers whether section

12-58-117, C.R.S. 2018, *repealed and replaced by* section 12-155-

124, C.R.S. 2019, of the Plumbing Practice Act is unconstitutionally

vague and, in doing so, applies principles of statutory construction

to determine whether the statute requires line-of-sight supervision

of plumbing apprentices at the job site. The division concludes that

section 12-155-124 is not void for vagueness because the terms

here challenged, although ambiguous, are capable of a

constitutional construction. Because the division concludes that

section 12-155-124 only requires that a licensed plumber

supervising apprentices be within a sufficient distance of the

apprentice, whether in or outside a building, in order to monitor, inspect, and sign off on the apprentice's work with reasonable frequency, the division vacates the Board's order.

Court of Appeals No. 19CA1144
Colorado State Plumbing Board Nos. 2016-1285 & 2016-2488

Michael E. Welch and Confidence Plumbing Co., Inc.,

Appellants,

v.

Colorado State Plumbing Board,

Appellee.

ORDER VACATED

Division II
Opinion by JUDGE PAWAR
Román and Tow, JJ., concur

Announced August 27, 2020

Springer and Steinberg, P.C., Jeffrey A. Springer, Aaron C. Acker, Craig L. Pankratz, Denver, Colorado, for Appellants

Philip J. Weiser, Attorney General, Cristel Shepherd, Assistant Attorney General, Denver, Colorado, for Appellee

¶ 1    In this appeal from an agency hearing, we consider, for the first time, whether the Plumbing Practice Act requires "line-of-sight" supervision of an apprentice plumber.  As necessarily interrelated with that inquiry, we determine what supervision "at the job site" means in the same statute.  Applying principles of statutory construction, we conclude that the statute does not require line-of-sight supervision, and that to "supervise apprentices at the job site" requires that a licensed plumber be within a sufficient distance of the apprentice, whether in or outside a building, in order to monitor, inspect, and sign off on the apprentice's work with reasonable frequency.

I.  Procedural Background

¶ 2    Confidence Plumbing Co., Inc. (Confidence) and its owner, Michael E. Welch, appeal the order of the Colorado State Plumbing Board (Board) disciplining them for violations of the Plumbing Practice Act.  §§ 12-58-101 to -117, C.R.S. 2018, *repealed and*

1

*replaced by* §§ 12-155-101 to -124, C.R.S. 2019.[1]  The Board[2] found

that Mr. Welch and Confidence violated section 12-155-124, C.R.S.

2019, by allowing a plumbing apprentice to use a soldering torch

without having line-of-sight supervision from a licensed plumber.

As a result, the Board imposed a $2300 fine against Mr. Welch and

Confidence, suspended Mr. Welch's journeyman and master

plumber licenses for five years, and suspended Confidence's

plumbing contractor registration for five years.  On appeal, Mr.

Welch and Confidence challenge the constitutionality of section

12-155-124, as well as the Board's adoption of the interpretation of

the Administrative Law Judge (ALJ) that "supervision" under that

section requires line-of-sight oversight of apprentices at the job site.

---

[1] In particular, section 12-58-117, C.R.S. 2018, was relocated to section 12-155-124, C.R.S. 2019, with only minor nonsubstantive changes that are not relevant to this dispute.  Ch. 136, sec. 1, § 12-155-124, 2019 Colo. Sess. Laws 1010.

[2] We note that the Board (through the Attorney General) is both the petitioner that prosecuted enforcement before the administrative law judge, as well as the reviewing entity (through the Board's conflicts program director) that issued the final order on appeal. While this is the normal procedure, we attempt to minimize confusion by referring to the petitioner as the Attorney General and the reviewing entity as the Board.

¶ 3    Though we disagree with Mr. Welch and Confidence that section 12-155-124 is unconstitutional, we agree that the Board incorrectly interpreted section 12-155-124 in applying it to Mr. Welch's conduct.  We therefore vacate the Board's order.

## II.  Relevant Facts

¶ 4    In 2016, a plumbing apprentice working for Confidence performed plumbing work in an unfinished house that was part of a master-planned community in Aurora, Colorado.  Pursuant to the Plumbing Practice Act, a registered plumbing apprentice may perform plumbing work without a license, provided that he or she is "under the supervision of a licensed plumber."  § 12-155-124(1).  "Supervision requires that a licensed plumber supervise apprentices at the job site."  *Id.*

¶ 5    A building inspector for the city of Aurora saw the apprentice using a soldering torch on a domestic water line.  The inspector also saw that a licensed plumber was not in the house with the apprentice.  Based on his observations, the building inspector filed a complaint with the Board, alleging that Mr. Welch and Confidence had engaged in "unlicensed practice."  In a response to the complaint, Mr. Welch stated:

> [W]e did and do have a licensed supervisor on the jobsite when plumbing installations are performed. It should be noted, however, that a jobsite is not just one building in residential construction, but several homes located in a larger community. The supervisor may not have been in that particular home at the time of the complaint, but he was on site.

¶ 6 Upon referral from the Board, the Attorney General filed a petition with the Office of Administrative Courts, charging Mr. Welch and Confidence with failing to supervise the apprentice in violation of section 12-155-124.[3] The petition requested that (1) Mr. Welch's journeyman and master plumber licenses be placed on probation for five years; (2) Confidence's contractor registration be placed on probation for five years; and (3) Mr. Welch and Confidence pay a fine of $2300. *See* § 12-58-110, C.R.S. 2018, *repealed and replaced by* § 12-155-113, C.R.S. 2019.

¶ 7 The ALJ held a hearing on the petition. Several witnesses testified regarding supervision of plumbing apprentices at job sites, including Mr. Welch, the building inspector, a journeyman plumber

---

[3] The petition included an additional charge against Mr. Welch and Confidence for failing to supervise a different plumbing apprentice, but the ALJ found that the Attorney General failed to prove its allegations as to that charge. That charge is not at issue on appeal.

4

and former Confidence employee, and the Board's program director. The ALJ also heard evidence regarding a citation brought against Mr. Welch and Confidence several years earlier for failure to supervise an apprentice on two separate occasions that resulted in a stipulation in which Mr. Welch and Confidence agreed to a fine.

¶ 8 The ALJ issued an initial decision order, finding that Mr. Welch and Confidence violated section 12-155-124. The ALJ specifically concluded that section 12-155-124 requires licensed plumbers to maintain line-of-sight supervision over apprentices using soldering torches and that "job site" means the same building in which the apprentice is working. In so concluding, the ALJ cited the testimony from Confidence's former employee as particularly persuasive regarding line-of-sight supervision for apprentices using soldering torches.

¶ 9 The ALJ did not impose the sanctions requested in the petition, however, finding them "too harsh." Instead, the ALJ placed Mr. Welch's master and journeyman plumber licenses and Confidence's contractor registration on probation for one year and imposed a $500 fine, pursuant to section 12-155-113.

¶ 10    Mr. Welch and Confidence, as well as the Attorney General, filed exceptions to the ALJ's initial order.  The Attorney General modified the originally requested sanctions, seeking instead to suspend Mr. Welch's plumber licenses and Confidence's contractor registration for one year, in lieu of placing them on probation.  Mr. Welch and Confidence responded that section 12-155-124 is unconstitutionally vague; section 12-155-124 does not require line-of-sight supervision; and the ALJ improperly relied on the former employee's testimony in interpreting the statute.

¶ 11    In its final order, the Board adopted the ALJ's findings of evidentiary fact and ultimate conclusions, determining that section 12-155-124 requires line-of-sight supervision at the job site over apprentices using soldering torches.  However, the Board declined to resolve the meaning of "job site," noting that "there was no need for the Administrative Court to determine whether a 'jobsite' is a single house identified on a permit or a group of homes in a development — either way line-of-sight supervision is required while an apprentice solders a domestic water line."  The Board also found that it lacked jurisdiction to address Mr. Welch and Confidence's constitutional challenge to section 12-155-124.  Citing Mr. Welch

6

and Confidence's prior offense for failing to supervise an apprentice, as well as the "high potential for fire when soldering with a torch," the Board determined that harsher sanctions were warranted than those the ALJ had imposed. It suspended Mr. Welch's master and journeyman plumber licenses and Confidence's contractor registration for five years and imposed a $2300 fine.

¶ 12    Mr. Welch and Confidence appeal the Board's final order, contending that (1) section 12-155-124 is unconstitutionally void for vagueness; (2) the Board erred by adopting the ALJ's interpretation of section 12-155-124 to require line-of-sight supervision when apprentices use soldering torches; and (3) the Board erred by determining that the ALJ properly relied on Confidence's former employee's testimony as the basis for her interpretation of the statute. We disagree with Mr. Welch and Confidence's claim that the statute is unconstitutionally vague. We agree, however, that the Board erroneously interpreted the statute. Because we vacate the order, we need not address Mr. Welch and Confidence's third contention.

### III. Section 12-155-124 Is Not Void for Vagueness

¶ 13 Mr. Welch and Confidence contend that section 12-155-124 violates due process and must be declared void because it contains impermissibly vague terms and standards. They argue that section 12-155-124 is vague because it fails to clearly define "supervision," "job site," and "supervise apprentices at the job site," leaving plumbing licensees without appropriate guidance for the supervision of apprentices. We conclude that section 12-155-124 is not void for vagueness because the challenged terms, although ambiguous, are capable of a constitutional construction.

### A. Jurisdiction

¶ 14 Administrative agencies do not have the authority to determine the constitutionality of statutes they are charged with enforcing. *Arapahoe Roofing & Sheet Metal, Inc. v. City & Cty. of Denver*, 831 P.2d 451, 454 (Colo. 1992). "That function may be exercised only by the judicial branch of government." *Id.* In cases involving direct review of agency action, the court of appeals has initial jurisdiction to review the constitutionality of a statute. *Celebrity Custom Builders v. Indus. Claim Appeals Office,* 916 P.2d 539, 541 (Colo. App. 1995).

## B. Burden of Proof and Standard of Review

¶ 15　　In determining the constitutionality of a statute, we begin with the presumption that the statute is valid. *Coffman v. Williamson*, 2015 CO 35, ¶ 13. The burden is on the party challenging the statute to prove it is unconstitutional beyond a reasonable doubt. *Id.* Statutory terms should be construed in a manner that preserves the statute's constitutionality. *People v. Zapotocky*, 869 P.2d 1234, 1240 (Colo. 1994). If the statute is capable of multiple constructions, one of which is constitutional, the constitutional interpretation should be adopted. *Id.*

¶ 16　　We review an agency's statutory interpretation de novo. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo. 2005). We may defer to the agency's interpretations of its governing statutes, but "we 'are not bound by an agency decision that misapplies or misconstrues the law.'" *Welby Gardens v. Adams Cty. Bd. of Equalization*, 71 P.3d 992, 1000 (Colo. 2003) (quoting *El Paso Cty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 704-05 (Colo. 1993)). The agency's reading of a statute cannot alter the statutory language by adding or subtracting words. *Holcomb v. Jan-Pro Cleaning Sys.*, 172 P.3d 888, 894 (Colo. 2007).

¶ 17    Our primary task in construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Iannicelli*, 2019 CO 80, ¶ 19. To determine legislative intent, we look first to the plain language of the statute, giving the words their common meanings. *Id.* We must read and consider the statute as a whole "to give consistent, harmonious, and sensible effect to all its parts." *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000) (quoting *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986)). And we must avoid statutory constructions that would lead to illogical or absurd results. *Iannicelli*, ¶ 20.

¶ 18    If the statutory language is clear and unambiguous, we must interpret the statute as written. *Zapotocky*, 869 P.2d at 1238. If, however, the intended meaning of the statutory language is unclear and the statute is capable of more than one reasonable construction, the statute is considered ambiguous, and we may apply a body of accepted intrinsic and extrinsic aids in order to discern legislative intent. *Id.*; *see also Holcomb*, 172 P.3d at 890. Such interpretive aids include "[t]he common law or former statutory provisions, including laws upon the same or similar subjects"; the legislative declaration and purpose of the statute; and

10

the consequences of a particular interpretation.  § 2-4-203(1)(d),

C.R.S. 2019; *Gallion v. Colo. Dep't of Revenue*, 171 P.3d 217, 221-22

(Colo. 2007).

C.  Analysis

1.  Section 12-155-124 Is Ambiguous

¶ 19    A "[p]lumbing apprentice" is "any person, other than a master,

journeyman, or residential plumber, who, as his or her principal

occupation, is engaged in learning and assisting in the installation

of plumbing."  § 12-155-103(9), C.R.S. 2019.  The Plumbing

Practice Act requires that apprentices be supervised by licensed

plumbers.

> Any person may work as a plumbing
> apprentice for a registered plumbing
> contractor but shall not do any plumbing work
> for which a license is required pursuant to this
> article 155 except under the supervision of a
> licensed plumber.  Supervision requires that a
> licensed plumber supervise apprentices at the
> job site.  One licensed journeyman plumber,
> master plumber, or residential plumber shall
> not supervise more than three apprentice
> plumbers at the same job site.

§ 12-155-124(1).  A plumber charged with supervising an

apprentice is responsible for the apprentice's work, and the

plumber's license may be revoked, suspended, or denied, under

11

section 12-155-113, for improper work performed under his or her supervision. § 12-155-124(2).

¶ 20    But what does supervision of apprentices at the job site require for compliance with section 12-155-124?  The Board resolved this question by requiring line-of-sight supervision over apprentices using soldering torches at the job site.  However, in looking to the plain language of the statute, we see that section 12-155-124 does not expressly provide that compliance requires this specific degree of supervision.  *See Bd. of Educ. v. Wilder*, 960 P.2d 695, 703 (Colo. 1998) (laws must provide fair notice of what conduct is prohibited or mandated, or risk inviting arbitrary and discriminatory enforcement).  The plain language of the statute says "[s]upervision requires that a licensed plumber *supervise apprentices at the job site*" and that one licensed plumber shall not supervise more than three apprentices at the same job site. § 12-155-124(1) (emphasis added).

¶ 21    Despite legislating the supervision of apprentices — violation of which may result, as it did here, in a five-year license suspension and a $2300 fine — the Plumbing Practice Act does not define "supervision," "supervise," or "job site" anywhere in its text.  And

the Board has not provided any written guidance in the form of rules or position statements to assist individuals in the plumbing trade in ensuring compliance with the statute.

¶ 22 Because the terms in question are not defined by statute, we first look to their dictionary meanings. *Cowen v. People*, 2018 CO 96, ¶ 14. The terms "job site" and "supervise" or "supervision" are defined broadly by both common and technical dictionaries.

¶ 23 The common dictionary definition of "supervise" is "to be in charge of." Merriam-Webster Dictionary, https://perma.cc/X8D2-3XEC. The term "job site" does not have its own common dictionary definition, but in the context of this case, we can combine the definitions of "job" and "site" to ascertain the common meaning of the full term. The word "job" means "the object or material on which work is being done," Merriam-Webster Dictionary, https://perma.cc/F9XY-XWM9, and "site" means "the spatial location of an actual or planned structure or set of structures (such as a building, town, or monuments)," or, alternatively, "the place, scene, or point of an occurrence or event," Merriam-Webster Dictionary, https://perma.cc/3JNM-67MA. In combining these definitions within the context of plumbing, "supervise apprentices

at the job site" means for a licensed plumber to be in charge of apprentices at the spatial location of an actual or planned structure or set of structures on which, or the place or scene where, plumbing work is being done.

¶ 24     As defined by a technical construction dictionary, "supervision" means "[d]irection of work performed by the contractor's (or others) workers on site, as specifically defined by the contract."  RSMeans Illustrated Construction Dictionary 307 (student ed. 2012).  And "job site" means "[t]he area within the defined boundaries of a project."  *Id.* at 170.  Combining these technical definitions, we see that "supervise apprentices at the job site" means for a supervising plumber to direct the work performed by apprentices in the area within the defined boundaries of a project, as specifically defined by the applicable contract.

¶ 25     In reviewing these definitions, we conclude that their common meanings are insufficient to resolve the questions at issue — namely, what is practically required of a licensed plumber to supervise or "be in charge of" an apprentice, and what is the physical proximity required of the licensed plumber in relation to the apprentice's location?

¶ 26    The commonly accepted definitions leave the challenged terms susceptible to more than one reasonable interpretation, as is illustrated by the testimony elicited during the ALJ hearing.  At the hearing, several witnesses testified as to their understanding of what is required to "supervise apprentices at the job site" based on their plumbing experience.  Their testimony establishes consensus that a single "job site" is generally associated with a single construction permit number.  But ambiguity remains: What does supervision "at the job site" contemplate when multiple buildings in a planned residential community are encompassed within a single permit?

¶ 27    Based on the witnesses' hearing testimony, we can discern at least three possible interpretations of "supervise apprentices at the job site":

(1)    A licensed plumber must be in the same building as and have direct line-of-sight of an apprentice at all times when the apprentice is performing plumbing work.

(2)    As a general rule, a licensed plumber should accompany an apprentice in the same building, but that is not always required, especially if an emergency arises for

which the licensed plumber must leave.  Apprentices should only be permitted to use soldering torches with direct line-of-sight supervision.

(3)   A licensed plumber need not be in the same building as the apprentice but must be in one of the buildings under construction on the permit and must inspect and sign off on the apprentice's work.

¶ 28     Based on this testimony, the ALJ derived her own interpretation of section 12-155-124: a licensed plumber must remain in the same building in which an apprentice is working and is required to maintain line-of-sight supervision over apprentices using soldering torches.

¶ 29     Because the intended scope of section 12-155-124 is unclear and, as the testimony reveals, capable of more than one reasonable construction, we conclude that section 12-155-124 is ambiguous. *Holcomb*, 172 P.3d at 890; *Zapotocky*, 869 P.2d at 1238.  We must therefore turn to other tools of statutory interpretation to guide our analysis.

## 2. Common Law and Laws on Similar Subjects

¶ 30    Section 12-155-124 has not previously undergone judicial scrutiny.  In doing so now, we first look to the construction of laws on similar subjects for assistance.  *Town of Erie v. Eason*, 18 P.3d 1271, 1276 (Colo. 2001).  Like the Plumbing Practice Act, Colorado's statutes governing the practice of electricians are also found in Title 12, Business Professions and Occupations.  *See* §§ 12-115-101 to -124, C.R.S. 2019.  And also like the Plumbing Practice Act, the statutes regulating electricians contain a provision for the supervision of apprentices by licensees, *see* § 12-115-115, C.R.S. 2019, and a provision for disciplinary action against a licensee for failure to supervise apprentices properly, *see* § 12-115-122, C.R.S. 2019.

¶ 31    Notably, however, the electrician statutes were substantively modified in 2019 to "define[] the difference between supervision and direct supervision as it applies to apprentices."  Legislative Council of the Colo. Gen. Assembly, Fiscal Note on S.B. 19-156, at 2 (Mar. 7, 2019), https://perma.cc/K6UY-EDDY; *see* Ch. 136, sec. 14, § 12-115-115, 2019 Colo. Sess. Laws 3204; Ch. 136, sec. 17, § 12-115-122, 2019 Colo. Sess. Laws 3207-08.

¶ 32    The relevant statutory versions in effect prior to the

amendments stated:

> (1) Any person may work as an apprentice but
> shall not do any electrical wiring for the
> installation of electrical apparatus or
> equipment for light, heat, or power except
> under the *supervision* of a licensed electrician.
> The degree of *supervision* required shall be no
> more than one licensed electrician to *supervise*
> no more than three apprentices at the jobsite.
>
> (2) Any electrical contractor, journeyman
> electrician, master electrician, or residential
> wireman who is the employer or *supervisor* of
> any electrical apprentice working at the trade
> shall be responsible for the work performed by
> such apprentice. . . .
>
> (3)(b) Such apprentice shall be under the
> *supervision* of either a licensed electrician or a
> residential wireman as set forth in subsection
> (1) of this section.

§ 12-23-110.5, C.R.S. 2018 (emphasis added).  And a licensed

electrician could be disciplined by the State Electrical Board for

failure to "adequately *supervise* an apprentice who is working at the

trade pursuant to section 12-23-110.5." § 12-23-118(1)(j), C.R.S.

2018 (emphasis added).

¶ 33    Following the Department of Regulatory Agencies' sunset

review of the article governing the practice of electricians, the

18

legislature modified the statutes to specifically qualify all

occurrences of electrician apprentice "supervision" as "direct":

> (1) Any person may work as an apprentice but shall not do any electrical wiring for the installation of electrical apparatus or equipment for light, heat, or power except under the *direct supervision* of a licensed electrician.  A licensed electrician shall not *directly supervise* more than three apprentices at a job site.
>
> (2) An electrical contractor, journeyman electrician, master electrician, or residential wireman who is the employer or *direct supervisor* of any electrical apprentice working at the trade is responsible for the work performed by the apprentice. . . .
>
> (3)(b) An apprentice must be under the *direct supervision* of a licensed electrician as set forth in subsection (1) of this section.

§ 12-115-115 (emphasis added).  And a licensed electrician can now

be disciplined by the State Electrical Board for failure to

"adequately *directly supervise* an apprentice who is working at the

trade pursuant to section 12-115-115."  § 12-115-122(1)(j)

(emphasis added).

¶ 34    Furthermore, the legislature added definitions for "direct

supervision" and "supervision" to the electrician statutory scheme:

19

"Direct supervision" means that the supervising licensed master electrician, journeyman electrician, or residential wireman is physically present at the same physical address where the apprentice is working.

. . . .

"Supervision" means the management of a project to ensure that work on the project is done correctly and according to the law.

§ 12-115-103(2.5), (12), C.R.S. 2019.

¶ 35    We find these amendments to the electrician statutes informative, in that the legislature chose to apply this narrower definition of supervision only to electrician apprentices, not to plumbing apprentices.  If the legislature intended that the references to supervision of electrician apprentices referred to *direct* "management of a project to ensure that work on the project is done correctly and according to the law," there would have been no need for it to qualify the term.

¶ 36    The legislature could have made similar modifications to the analogous sections of the Plumbing Practice Act, but it did not.  *Cf. Mook v. Bd. of Cty. Comm'rs*, 2020 CO 12, ¶¶ 34-35 (observing that the term "contiguous" as more narrowly defined in other unrelated statutes does not contain similar qualification language in the

20

statute at issue, thereby informing the court's statutory interpretation analysis). "Just as important as what the statute says is what the statute does not say. . . . We should not construe these omissions by the General Assembly as unintentional." *Auman v. People*, 109 P.3d 647, 656-57 (Colo. 2005). We therefore interpret the legislature's omission of such qualifying language regarding the supervision of apprentices from the Plumbing Practice Act as intentional. *Id.* at 657.

¶ 37 Though nonbinding, we also find support in case law from other jurisdictions involving the supervision of subordinates and construction at job sites. In a case that required the court to determine insurance liability for weather delays in a construction project, the United States District Court for the Eastern District of Louisiana relied on a dictionary of architecture and construction to find that "the term job site means, quite simply, the site of a construction project. The term 'site' is also defined as 'the specific location of a building *or buildings*.'" *J. Ray McDermott & Co. v. Fid. & Cas. Co.*, 466 F. Supp. 353, 364 (E.D. La. 1979) (emphasis added) (citations omitted).

¶ 38    And our own supreme court, albeit in dicta, provides

additional guidance.  In a case decided in 1926, the court affirmed

judgment entered against several plumbing apprentices for

engaging in plumbing work without a license in violation of a city

ordinance.  *Evans v. City & Cty. of Denver*, 79 Colo. 533, 247 P. 173

(1926).  The court concluded that the apprentices' employer had

"allowed [them] to work alone and without supervision to such an

extent that the apprentices were really working as journeymen

plumbers."  *Id.* at 536, 247 P. at 174.  But in so concluding, the

court declared in dicta that

> [e]ven under the strictest view of it *an
> apprentice need not perform every stroke of his
> labor as a learner under the constant eye of the
> master*, so long as the superior skill of the
> master appears in the work through his
> directions and instructions given to the
> apprentice.

*Id.* (quoting *City of St. Louis v. Bender*, 154 S.W. 88, 92 (Mo. 1913)

(Lamm, J., concurring)) (emphasis added).

¶ 39    We find this dictum instructive in at least discounting the

requirement for line-of-sight supervision of apprentices engaged in

plumbing work.  The *Evans* court stated that supervision of

apprentice plumbers under a 1926 city ordinance did not require

"the constant eye of the master," provided that the supervising plumber's directions and instructions appear in the final product. *Id.* (quoting *Bender,* 154 S.W. at 92) (Lamm, J., concurring).

¶ 40 Finally, several cases involving violation of the federal Occupational Safety and Health Act (OSHA) indicate that direct, line-of-sight supervision of trade apprentices is not required. *See Capital Elec. Line Builders of Kan., Inc. v. Marshall,* 678 F.2d 128, 131 (10th Cir. 1982) (concluding that the supervising licensed electrician was not required to actually accompany apprentices in the aerial bucket or oversee their work from below because "such a requirement would be unreasonable"); *Horne Plumbing & Heating Co. v. Occupational Safety & Health Review Comm'n,* 528 F.2d 564, 569-70 (5th Cir. 1976) (finding that there was nothing more that the supervisor could have done to prevent the OSHA violation "other than personally directing the operation himself," which the court determined "would be a wholly unnecessary, unreasonable, and infeasible requirement" because, although "the courts have emphasized the importance of adequate instruction and supervision in safety matters, they have consistently refused to require measures beyond those which are reasonable and feasible"); *Cape &*

*Vineyard Div. of New Bedford Gas v. Occupational Safety & Health Review Comm'n*, 512 F.2d 1148, 1155 (1st Cir. 1975) ("There is nothing in the record indicating that prudence would require a supervisor or buddy constantly to watch the employee on the pole, or that any such practice would be feasible.").

¶ 41 With this framework in mind, we enlist further guidance from other principles of statutory construction.

### 3. Legislative Declaration and Purpose of the Statute

¶ 42 The Plumbing Practice Act's legislative declaration proclaims that the purpose of the Act is to safeguard public health. *See* § 12-58-101(2), C.R.S. 2018. And ensuring that plumbing apprentices are appropriately supervised certainly falls within the purview of this purpose.

> (1) The general assembly hereby finds that:
>
> > (a) Improper plumbing can adversely affect the health of the public and that faulty plumbing is potentially lethal and can cause widespread disease and an epidemic of disastrous consequences;
> >
> > (b) To protect the health of the public, it is essential that plumbing be installed by persons who have proven their knowledge of the sciences of pneumatics and

24

> hydraulics and their skill in installing plumbing.
>
> (2) Consistent with its duty to safeguard the health of the people of this state, the general assembly hereby declares that individuals who plan, install, alter, extend, repair, and maintain plumbing systems should be individuals of proven skill.

§ 12-58-101, C.R.S. 2018.

¶ 43    Similarly, the Board's program director testified at the ALJ hearing that the public policy behind apprentice supervision is "to ensure the correct and safe installation of the plumbing."

¶ 44    Recalling from above the multiple interpretations offered by witnesses during the ALJ hearing of what it means to supervise apprentices at the job site, it is apparent that the public safety objective can be achieved under each of the perceived constructions.  Whether a licensed plumber maintains line-of-sight supervision of an apprentice during soldering only, accompanies an apprentice at all times, or is nearby but returns to inspect and sign off on the apprentice's work, the public policy of ensuring correct and safe installation of plumbing can be achieved.

¶ 45    Yet, clear construction of section 12-155-124 remains elusive because it does not sufficiently prescribe the level or type of

25

supervision required.  So, taking these safety objectives into account, we turn finally to the Board's interpretation of section 12-155-124 and consider its consequences.

### 4. Consequences of the Board's Interpretation

¶ 46  In her initial decision, the ALJ concluded that section 12-155-124 requires licensed plumbers to maintain line-of-sight supervision when apprentices use soldering torches and that job site refers to the same building in which the apprentice is working. In its final order, the Board adopted the ALJ's ultimate conclusions, agreeing that section 12-155-124 requires line-of-sight supervision of apprentices using soldering torches, but did not specifically define job site, reasoning that line-of-sight supervision necessarily requires that the supervising plumber and apprentice be in the same building.

¶ 47  As an initial matter, we recall that principles of statutory construction prohibit the Board from altering statutory language by adding or subtracting words. *See Holcomb*, 172 P.3d at 894.  And terms even slightly similar to line-of-sight supervision or those alluding to a job site being a single building are nowhere to be found in the Plumbing Practice Act.  Therefore, the Board

inappropriately altered the language of section 12-155-124 by adding words.

¶ 48 Relatedly, and as previously discussed, the legislature recently amended the electrician statutes to specify that apprentice supervision must be "direct" — with "direct supervision" requiring that the supervising electrician "is physically present at the same physical address where the apprentice is working." § 12-115-103. As we pointed out, the legislature declined to make similar amendments to the Plumbing Practice Act. We further note that, though the legislature added language in the electrician statutes to delineate between "supervision" and "direct supervision," it did not define "direct supervision" as requiring line of sight. In so noting, we are reminded of our supreme court's declaration that "[j]ust as important as what the statute says is what the statute does not say." *Auman,* 109 P.3d at 656-57.

¶ 49 Furthermore, adopting the Board's interpretation would lead to a construction that is not consistent or in harmony with other parts of the statute. *See Nieto*, 993 P.2d at 501. As discussed above in Part III.C.1, section 12-155-124 directs that a licensed plumber is not permitted to supervise more than three apprentices

27

at the same job site. Under the Board's construction requiring line-of-sight supervision, the three apprentices would not only have to be in the same building simultaneously but also all working in the supervisor's line of sight, creating potential logistical difficulties, or even thwarting the benefit of allowing one supervisor to supervise three apprentices.[4]

¶ 50 Absent clear language from the legislature indicating an intent to define "supervise" as line-of-sight supervision, we conclude that the Board misconstrued the law by reading additional words into section 12-155-124 that do not appear in the statutory language. *See Holcomb*, 172 P.3d at 894. And because we are not bound by an agency decision that misapplies or misconstrues the law, *see Welby Gardens*, 71 P.3d at 1000, we decline to endorse the Board's construction.

---

[4] We acknowledge that the newly amended electrician statutes also allow for supervision of up to three electrician apprentices at a job site and that the supervision in that context must be "direct." *See* § 12-115-115, C.R.S. 2019. But "direct" supervision there requires only that a supervising electrician be physically present at the same physical address where the three apprentices are working. Being physically present does not necessarily equate with a line-of-sight view, which removes the logistical issue present with the Board's interpretation of the plumbing statute here.

### 5. What it Means to Supervise Apprentices at the Job Site

¶ 51    None of the previously discussed tools of statutory construction, standing alone, provides us with a clear meaning for "supervise apprentices at the job site." But by synthesizing the results from our application of these tools, we can arrive at a constitutionally valid construction of the statute.

¶ 52    We conclude that to "supervise apprentices at the job site" means that a licensed plumber must be within a sufficient distance of the apprentice, whether in or outside a building, such that by monitoring, inspecting, and signing off on the apprentice's work with reasonable frequency, the correct and safe installation of plumbing can be achieved. This construction is wholly consistent with each of the statutory canons we examined:

1. *Plain meaning*: under our interpretation, a licensed plumber will be in charge of apprentices at the spatial location of a structure or set of structures on which plumbing work is being done by the apprentices.

2. *Laws on similar subjects*: cognizant of the legislature's amendments to define "direct supervision" in the electrician statutes and intentional omission of similar terms in the

Plumbing Practice Act, our construction does not read into the statute words that were not included.

3. *Common law*: drawing guidance from our supreme court, an apprentice need not be under "the constant eye of the master" because the supervising licensed plumber will periodically evaluate the apprentice's work to ensure that the directions and instructions provided to the apprentice appear in the final product. *See Evans*, 79 Colo. at 536, 247 P. at 174 (quoting *Bender*, 154 S.W. at 92) (Lamm, J., concurring).

4. *Legislative declaration and purpose of the statute*: with a licensed plumber monitoring, inspecting, and signing off on an apprentice's work with reasonable frequency, the correct and safe installation of plumbing can be achieved.

¶ 53    This construction of section 12-155-124 allows us to preserve the constitutionality of the statute, as we are required to do. *See Zapotocky*, 869 P.2d at 1240.[5]

---

[5] To be clear, we do not mean to suggest that the legislature could not, if it chose to, specifically provide for line-of-sight supervision,

## IV. Mr. Welch and Confidence Did Not Violate Section 12-155-124

¶ 54    Finally, we further conclude that, based on the ALJ's findings of evidentiary fact, Mr. Welch and Confidence did not violate section 12-155-124.

¶ 55    We have determined that compliance with the statute requires that a licensed plumber supervising apprentices be within a sufficient distance of the apprentices, whether in or outside a building, such that by monitoring, inspecting, and signing off on the apprentice's work with reasonable frequency, the correct and safe installation of plumbing can be achieved. In the initial order, the ALJ found that the supervising journeyman plumber was working near the house in which the apprentice was working when the apprentice was using the soldering torch. Moreover, the ALJ

_____

or define "job site" as a single building or even a more specific locus of work. We only hold that, in the absence of such clear language, the statute as interpreted by the ALJ and adopted by the Board may provide constitutionally deficient notice of what the statute requires. *See Rein v. Meagher*, 2020 CO 56, ¶ 33 ("The essential inquiry in addressing a void for vagueness challenge is whether the statute 'forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application.'" (quoting *People v. Gross*, 930 P.2d 933, 937 (Colo. 1992))).

accepted and adopted as part of her findings Mr. Welch's testimony that (1) all of the houses in the entire master-planned community were the "job site," with journeymen at the site working in multiple houses; and (2) the supervising journeymen were expected to inspect and sign off on the work done on the premises that day or face disciplinary measures. Accordingly, we conclude that Mr. Welch and Confidence complied with the requirements of section 12-155-124 as set forth in this opinion.

¶ 56 Because we conclude that section 12-155-124 is constitutional but that the Board erred in its interpretation of the statute, we do not reach Mr. Welch and Confidence's additional contention that the Board also erred by finding that the ALJ properly relied on the former Confidence employee's hearing testimony for her interpretation.

## V. Conclusion

¶ 57 The Board's order is vacated.

JUDGE ROMÁN and JUDGE TOW concur.